TYLER, J.
In the year 1838, James Madison, as the committee of Josiah Chambers, a lunatic, transferred *or assigned to the appellant Edmunds certain bonds bearing evidence on their face that they were the propert3r of the lunatic; and William Elliot having succeeded Madison as committee of Chambers, instituted a suit for the settlement of Madison’s accounts as committee, in which suit he obtained a decree for upwards of twenty-five thousand dollars, some three thousand dollars of which recovery was paid by the appellees, as sureties of Madison in his official bond as committee. The appel-lees then instituted this suit. And in their bill they charge substantially, that Madison, while acting as committee of Chambers, misapplied and converted to his own use bonds belonging to the estate of Chambers ; and that on the 8th of September, 1838, he paid over and delivered to the appellant Edmunds, on account of a debt due to him from Madison individually (in part purchase of his crop of tobacco) two bonds belonging to the estate of Chambers, amounting to §983 93, as of the 22d of April, 1838. This allegation in the bill is not denied in the answer, but is in substance admitted. For although the respondent denies all intention to aid in a breach of trust, he nevertheless admits facts, from which the law infers, that he was a party to the breach of trust. He admits a sale of his crop of tobacco to Madison, and the receipt of these bonds in part payment; which is substantially an admission that the bonds were received in payment of Madison’s individual indebtedness to him. The general, rule of law applicable to, such transactions is: That when bonds in the hands of a fiduciary are transferred or assigned, and the consideration of the transfer or assignment is a personal debt due from the fiduciary, and the assignee takes with notice of the trust, that the law holds him a party to the breach of trust; and subjects the property to the trust in the hands of the alienee equally as it would have been in the hands of the fiduciary. See Watkins v. Cheek, 2 Sim. & Stu. 204-5; 8 Vesey, 104. This is the general rule of law, and there is not a fact or circumstance proved in this cause to except it from its influence.
*If then these bonds, or the proceeds in the hands of Edmunds, are equally subject to the trust as they would have been in the hands of Madison, the question arises, whether Madison in a suit against him would have been permitted to set up the defence which has been insisted on by his alienee, the appellant. If Madison could not make the defence, he could not make it. The defence is, that Madison’s appointment as committee was void; and secondly, that these bonds were given for the purchase of land of the lunatic, the sale whereof was so irregular, as to make it the duty of a court to annul it at the instance of the lunatic, should he be restored to sanity. The manifest answer to these objections is, that Madison, having acted as committee of Chambers ; having represented himself as committee; having received these bonds from the commissioners as the property of the lunatic; having transferred them in payment of his own debts, with the evidence on their face that they were the property of Chambers, is estopped on the grounds of the public policy and good .faith from repudiating his own representations; and for another reason, that as to the regularity or irregularity of the sale, that is a matter in which he is not at all interested. Chambers’ committee (Elliot) has recovered the proceeds of the sale of the land; and if the sale is ever rescinded Chambers’ estate would have to account for the purchase money as a condition precedent to its rescission. The evidence in the cause is, that the appellees have paid, or secured to be paid, to Chambers’ committee, more than the amount of these bonds under a decree of the court of competent jurisdiction, which remains unreversed, and they are entitled to stand in the shoes of Elliott as against the appellant. I am, therefore, for affirming the decree, with costs.
CLOPTON, J.
The appellees, by their bill in the Circuit Superior Court of Prince Edward, make the following case. That the appellee Morton, and Chas. Venable, the testator of the appellees Henry J. Venable *and John W. Gilliam, executed to the justices of Prince Ed *494 ward county, 'on the 20th of June, 1825, a bond as sureties of James Madison, who had been appointed committee of Josiah Chambers, a person of unsound mind, for the faithful discharge of his duties; that on the 21st of August, 1837, the appellee Joseph E. Venable, and his testator Robert Venable, with four others who are not parties, executed a like bond as sureties for Madison, as committee as aforesaid; that in the year 1836 or ’7, certain commissioners, or a portion of them, acting under an act of the General Assemblj', passed March 9th, 1836, sold a portion of the lands of the lunatic Chambers, adjoining the town of Earmville, on terms of credit, taking of the purchasers bonds payable to themselves as “commissioners on the part of Josiah Chambers;” that these bonds, to the amount of about $16,000, were by them delivered in April, 1837, to Madison, the committee, as part'of the estate of the said Chambers; that two of the bonds so delivered to Madison were by him, on the 8th September, 1838, paid over and deljvered to the appellant Edmunds on account of a debt due him from Madison, individually, for the purchase of his tobacco crop; that the bonds amounted on the 22d of April, 1838, to the sum of $983 93; that Madison resigned or was displaced as committee of Chambers, and died utterly insolvent in the year 1840, leaving unpaid a heavy debt to the said Chambers; that William Elliott, who had become the committee of Chambers, instituted suit in the same court against the appellees and others, and at the April term, 1842, obtained a decree for upwards of $25,000, with interest and costs; that a part was paid out of the proceeds of the property of Madison conveyed in trust for that purpose, and that the whole balance was satisfied by the then plaintiffs in that suit. And they ask, upon the principle of subrogation, that Edmunds may be compelled to account for and pay to them the amount of the bonds so received by him from the committee, with interest, and the Circuit Court, by its decree, in Majr, 1847, *( being of the opinion that the plaintiffs were entitled to the relief sought upon the ground, that Madison, the committee of Chambers, had violated the trust reposed in him, and that the defendant Edmunds had participated and aided in that violation, the one by making, and the other by accepting, an assignment of the said bonds in satisfaction of a private debt due from Madison to Edmunds,) decreed, with the consent of the plaintiffs, that Ed-munds should pay the amount of the bonds received by him, principal and interest, directly to Elliot, the committee, (who in his answer admits that the greater part of the decree in his favor has been satisfied by the plaintiffs in such manner as he was willing to accept,) tobe applied by him when received, to the credit of the obligations of the plaintiffs.
The defendant, Edmunds, in his answer assumes as grounds of defence against the claim of the plaintiffs, that Chambers had never been legally found to be a person of unsound mind, and that James Madison and William Eliott, and particularly the former, had never been legally appointed his committee. The facts disclosed by the record applicable to these two matters of defence are these: first, an order of the County Court of Prince Edward, made December 18th, 1797, which, reciting that “it appearing to the court that Josiah Chambers is in a state of insanity,” proceeds to appoint a committee of said Chambers, without referring to any inquisition, taken and returned by justices in the county: second, an order of the Superior Court of Chancery at Richmond, made 26th March, 1825, in a suit depending in said court, appointing James Madison committee of Josiah Chambers, in place of the former committee, and requiring him to execute bond before the County Court of Prince Edward, in pursuance of which order the bond of the 20th June, 1825, with the appellee Morton and Charles Venable as sureties, was executed: third, an order of the County Court of Prince Edward, on the 21st of August, 1837, made in pursuance of the act of 1836, (which authorized the *sale of Chambers’ land,) giving that court authority to require additional security of the committee, in obedience to which the bond of that date was executed, as before referred to; and an order of the same County Court made November 18th, 1839, on the motion of a sister of Chambers, and with the consent of Madison his committee. By this order, the court accepted the resignation of Madison, and appointed Elliot committee, who thereupon gave bond with security. Upon these facts, the counsel for the appellant stated three questions.
1st. That the original appointment of a committee of Chambers was illegal and void; because it did not appear that he had been found to be a person of unsound mind by the examination and certificate of three justices of the peace.
2nd. That the appointment of Madison as committee was illegal and void; because it was made by the Superior Court of Chancery — a court which had no jurisdiction over the subject, and consequently the sureties in these two bonds were not bound; and
3rd. That 'the appointment of Elliot was illegal and void; because it was only a continuation of and substitution for the preceding appointment, which, being illegal and void, could give the subsequent appointment no validity, and consequently Elliot had no right to receive the money.
4th. It was further contended, on behalf of the appellant, that the act of 1836, which authorized the sale of Chambers’ land, and appointed for that purpose eight commissioners, a majority of whom were required to act, conferred a mere naked authority, which must be strictly pursued; and as it does not appear1 that a majority had acted, (but, as the counsel contended, a smaller number had,) the sales of the lands were therefore illegal and void, and *495 the title still remains in Chambers or his heirs; and, therefore, that Edmunds, although he might properly be liable to repay the amount he had received, ought not to be compelled to pay it to the ^committee of Chambers, or to the sureties of the former committee, Madison, but to hold it for the benefit of the purchasers, -whose money it is in that view; and
5th. That no fraud was intended, and in point of fact none was committed; because Edmunds sold his tobacco for a fair price and received the bonds in payment without a discount, thus only substituting one thing for another of equal value, and therefore he is not liable.
I listened with pleasure to the able argument of the counsel for the appellant in support of these views, but am unable to concur in the results to which he was conducted.
Upon the first two questions I do not think it proper to express any opinion; because, in the view which I take of the case, it is not important whether those orders of appointment were illegal or not, the decision of that question not being necessary to the decision of this case, for the reasons hereafter given on the third question.
Upon the third question, I am satisfied that the appointment of Elliot, in 1839, was entirely legal. It is true, that the law upon the subject (1 R. C. 1819, p. 412) gave particular directions in relation to lunatics who were to be sent to the asylum, yet a general jurisdiction was given to the county courts over all idiots and lunatics, with power to commit their persons and estates to proper and safe custody. This jurisdiction the County Court of Price Edward has exercised in this case, and to that court was confided the power to decide upon every fact and circumstance necessary to render an exercise of their jurisdiction proper, and we are bound to consider their judgment correct, until it is - reversed or annulled: it cannot be enquired into collaterally. Elliot’s appointment, then, being legal, it seems to follow, necessarily, that whether Madison’s appointment was regular or not can make no difference; the funds belonging to the lunatic’s estate were in his hands, and if his appointment was legal, he had resigned, and had no *longer any right to hold the funds, but was bound to pay them over to the legal committee. If, on the other hand, his- appointment was not legal, a fortiori that would give him no right to withdraw the funds from the rightful committee. And if it be conceded that the original appointment of Madison, and the orders under which he executed the two bonds before mentioned, were all illegal and irregular, and that the sureties in those bonds might have availed themselves of the defect and thus been relieved from the payment of the money, yet I do not perceive how this can enure to the benefit of the appellant. The sureties have been compelled to pay the money, and whether they attempted to avail themselves of that defence or not, they are now entitled to recover against the appellant, because he has in his hands a part of the money for which they have accounted ; and if they had made and succeeded in that defence, then the committee himself would be entitled to recover against the appellant, because he has in his hands money rightfully belonging to the estate of the lunatic.
Upon the fourth question, I am of opinion that the validity of the sales of the lands cannot properly be inquired into in this suit, and that the appellant in truth has no interest in the question. Many years have elapsed since the sales were made; they seem to have been acquiesced in by all concerned, and constituted an important branch of the suit against the sureties of Madison, who had an interest to investigate the question. But what interest has the appellant? Should the sales ever be disturbed on the ground of invalidity, it must be done by the heirs of Chambers who have received his estate, who would themselves be answerable over to the owners of the land; and therefore the appellant cannot be entitled to hold a part of the proceeds of sale, but should pay it over, she improperly holds it.
Upon the fifth question, I am entirely7 satisfied that the appellant did not intend to commit a fraud, and that he did not suspect he was engaged in a transaction *not perfectly innocent; but unwarily, he has done that which may subject him to loss, but to no imputation upon his motives. I consider it too well settled by concurrent authorities, to admit of question, that a person, who deals with a. fiduciary in relation to the trust estate, with a knowledge that he is so dealing, and thereby obtains an advantage to himself, or enables the fiduciary to make a misapplication of the fund, is responsible. In this case the bill charges that Madison assigned the bonds to the appellant in payment of a debt due to him. The appellant, in his answer, says that he sold his crop of' tobacco to Madison about the spring of 1838, and agreed to receive a part of the purchase ,money in bonds; that he received the bonds, but does not recollect whether he noticed at the time to whom the bonds were executed; and that he did not know, at the time of filing his answer, to-whom they were executed ; and that he very soon after the assignment placed them in the hands of an agent, who collected them. The evidence in the record is satisfactory that the bonds were in part of the estate of' Chambers, and so appeared on their face; and whether the appellant received them from Madison in satisfaction of an old debt due to him from Madison, or in part payment of tobacco at the time of the assignment, sold by him to Madison, as for cash, can make no difference. In either case it is a misapplication of the trust fund, in which the appellant aided and participated. I am, therefore, for affirming the decree..
*496 THOMPSON, J.
I fully assent to the judgment of affirmance to be entered in this cause, in which the whole court concurs upon the grounds concisely stated and incorporated in the judgment itself, by the President in pronouncing' it, and’concur moreover in the reasons assigned in the opinion of my brothers Tyler and Clopton. as well upon the points ruled, as for declining to express any opinion upon the questions raised by the 1st, 2d, and 3d causes of error assigned *by the appellant in his petition for an appeal, so earnestly, elaborately, and ably argued by his counsel; being satisfied that they are immaterial to the decision of the cause; because I am of opinion, that in reference to the proper determination and adjudication of the rights and liabilities of the parties litigant in this suit, it is matter of perfect indifference, whether the committees Madison and Elliot were such de facto or de jure — having been so appointed, whether legally or illegally, and having assumed to act as such, and having so acted: and that it is alike immaterial, whether the sale of the Farmville lots, under the special act of the legislature, was irregular, illegal, and void, or the reverse, since Madison as committee in fact received as part of the proceeds of sale in the form of bonds, the two which he illegally transferred and assigned to the appellant for his own immediate uses and purposes, with full knowledge on the part of Ed-munds that he was so dealing with the estate he represented, whereby both he and Madison became accountable and chargeable, as for a breach of trust; and for which breach of trust the plaintiffs have been subjected by decree as the sureties of Madison; and having been so held liable and subjected, have been subrogated to the rights of Madison’s successor Elliot, by the decree complained of and brought under our review by this appeal.
No one who has received a benefit or inflicted an injury through the instrumentality, or in virtue or under color, of an office or appointment under which he acted, or assumed to act, can be permitted to impeach the validity of his authority to act, in order to shield himself from , the legal consequences of his own acts. That would be to enable the de facto officer or appointee to profit by his usurpation of authority, and take advantage of his own wrong. He ought to be estopped from such a defence as well in a court of equity as a court of law. In this case it would not only be inequitable, but iniquitous, to tolerate such a defence.
*It was argued by the appellant’s counsel, that admitting the existence of the liability of Edmunds to some one on account of his concurrence in or connivance at the breach of trust on the part of Madison, say to the purchaser of the Farmville lots under the illegal and void sale, or to the heirs of the lunatic, if the sale, though illegal and void, were confirmed by them; yet upon the hypothesis of the legal invalidity of the appointment of Elliot and Madison and of the sale and of the bonds entered into by the securities, no foundation was laid for the subrogation of the sureties by the decree rendered against them. To this it may be answered, if it be conceded that the bill could not be sustained in favor of the sureties upon the sole and exclusive ground of the doctrine of subrogation or substitution, that this case does not rest upon that ground exclusively and alone; it may be well treated by us as a bill quia timet, or as the suit of Elliot, the committee and successor of Madison, who has never received full but only partial satisfaction of his decree, but in lieu thereof holds the obligations of the sureties; and the judge in the court below so treating it, rendered the decree in his favor against the appellant, and provided that, when collected, the amount realized should be entered as a credit on the obligations of the sureties. If the appellant could not be rightfully held liable by such a proceeding, it would be difficult to imagine how the purchaser of the land under the void sale, or the heirs of the lunatic, as the case may be, could otherwise than by subrogation to the rights of Madison, Elliot, or the sureties of Madison, there being no contract or privity of contract between such purchaser or heirs and the appellant, upon which to found any remedy in a court of law, or any other ground of relief than.that of sub-rogation or substitution in a court of equity —and the consequence would be, after defeating Elliot and the sureties, when the purchaser or heir, the rightful claimant, asserted his right, he might be met and defeated upon precisely the same ground, if it be held to be a valid ground of ^objection to the relief, which has been accorded in this cause by the court below.
FIEED, P.
In this case we are of opinion, upon principle and authority, (see Fisher v. Bassett, 9 Leigh; Jackson v. Updegraffe, 1 Rob. ; and Pinckard v. Woods, 8 Grat.) that the assignment by Madison to the appellant Edmunds, of the bond of White and Jackson, and the bond of Robertson and Jackson in part payment of a private debt due from Madison to Edmunds, was a violation of his duty as committee of Chambers, in which breach of trust Ed-munds participated by receiving the transfer of the bonds for that purpose, and in consequence thereof, became liable to account to Elliot, the subsequent committee, for their amount with interest, and the ap-pellees, the sureties of Madison, having been made to account to Elliot for the proceeds of these bonds with interest, they have a right tobe subrogated to the rights of Elliot against Edmunds, and to have a decree against him for the amount o£ the bonds with interest.
The questions discussed with so much ability by the appellant’s counsel, involving the legality of Madison’s appointment as committee of Chambers, by the Chancery *497 Court at Richmond, the validity of the bond executed by him and his sureties, and the legality of the sale of the Farmville lots necessarily arose, and were decided in the suit brought by Elliot against Madison and his sureties, by which the sureties were held bound by the court. We do not think these questions arise again in this cause, and therefore forbear to express any opinion upon them.
We are of opinion there is no error in the decree complained of, which is therefore to be affirmed with costs.
GII/MüyR, J., concurred.