## JAMES M. VANSANT and THE AMERICAN BONDING AND TRUST CO. *vs.* THE STATE OF MARYLAND.

*A Clerk of Court Must Account to the State For Interest Received by Him on Public Moneys Deposited in Bank—Emoluments and Perquisites of Office—Liability of Surety on Bond of Clerk—Evidence— Mingling Trust Funds.*

A clerk of Court who collects money for the State from the issue of licenses and other sources and deposits it in bank until paid over, is liable to the State for the interest thereon received by him from the banks, since the interest is a perquisite or emolument of office which, under the Constitution and laws the clerk is not allowed to retain.

Constitution, Art. 4, sec. 37, fixes the salaries of Clerks of Courts in Baltimore City and directs that "they shall be entitled to no other perquisites or compensation." And Art. 15, sec. 1, requires such officers to keep accounts of all moneys coming to their hands in the discharge of official duties or in any way growing out of or connected with their offices and to pay over to the treasurer of the State the excess of receipts over the official salary. Code, Art. 47, sec. 7, requires every clerk of Court at designated times in each year to pay to the treasurer all the public money which he may have received. Art. 17, sec. 12, requires

every clerk "annually to return to the Comptroller a full and accurate account of all his fees, emoluments and receipts," and by sec. 14, "the official bond of such clerk shall be answerable for the emoluments of his office over and above the sum  prescribed by the Constitution." Defendant as Clerk of the Court of Common Pleas in said city executed a bond to the State conditioned for the faithful performance of the duties required of him by law.   During certain years he collected large sums of money for the State from licenses and deposited the same in different banks, in his name as clerk, before making payment thereof to the treasurer of the State.   These banks paid to him interest on the deposits which he claimed to be entitled to keep, alleging that he was only bound to account to the State as a debtor for the amounts actually collected.   In an action against him and the surety on his bond.   *Held*, that the money so collected by him was public money received and held in trust for the State; that interest paid on it while deposited in bank belongs to the State, and was an emolument or perquisite of office which under the Constitution and the statutes the Clerk was expressly forbidden to retain.

The surety on the bond of the Clerk of Court is liable for the interest on public moneys received by him as above set forth, since Code, Art. 17, sec. 14, makes the bond answerable for the emoluments of office received by the Clerk over and above the constitutional salary, and the interest was received by him from the banks by virtue of his office, although the statute did not require him to deposit in bank money collected for the State.

If the Clerk of Court in this case mingled in the same bank account public moneys with other money not belonging to the State and received interest on the whole, then in an action by the State to recover the interest on its money, the burden of proof is on the defendants to show what portion of the interest so allowed on the whole account was allowed on money not belonging to the State.

Appeal from the Court of Common Pleas (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*W. Irvine Cross* and *Edward Duffy* (with whom were *Cowen, Cross & Bond* on the brief), for the appellants.

The position taken by the appellants on the liability of the Clerk of the Court of Common Pleas is that he is a debtor; his responsibility is absolute; any excuse on the ground of care or faithfulness is apart from the question, as in the case of any other debtor; that between accounting days he can

keep the money in his safe or can deposit it ; that if he does
the latter and receives interest on such deposit the interest be-
longs to him.   The State up to the day of accounting does
not ask him to tell what he has done with the money, and
after the day of accounting will not allow him.   The cases on
this point are numerous and are said to be conflicting, but
they are conflicting on but one point, viz., the effect that is to
be given to the bond.   There are really but two classes of
decisions.

Class 1. These decisions look solely at the bond.   They
hold that the bond is an absolute contract to have the funds
in hand by a certain day ; that even if the statutes make the
official a bailee, as by requiring the keeping and paying over
the same money received, public policy requires that he should
not, like other bailees, be excused in case of loss by proof
that he was not in fault.

Class 2. These decisions look solely at the statutes.   They
hold that if the statutes make an official a bailee he will be
governed by the law as to bailees ; if a debtor he will be
treated as a debtor.   Under this class there would be two sets
of cases :

2*a* Those where the statute make the official a bailee.   He
would then, in case of a loss, be excused on proving that
there was no negligence or fault on his part.

2*b* Those where the statutes make him a debtor.   He
would then on the day for payment owe the money like any
other debtor.

The doctrine of Class 1 originated in the case of *U. S.* v.
*Prescott*, 3 How. 578, where the decision is based on the lan-
guage of the bond, and says that it is not a case of bailment,
although the statute (5 *U. S. Stat. at Large*, p. 386, sec. 6),
clearly makes the official a bailee.   (See also 9 *U. S. Stat. at
Large*, p. 60, sec. 6.)   The subsequent cases correct this, and
in the case of *U. S.* v. *Thomas* (15 Wall.), the Court says
that to call a United States official anything but a bailee, in
view of the statute, would be an abuse of terms.   This case
of *Prescott* was followed in *U. S.* v. *Dashiell*, 4 Wall. 182; *U.*

*S.* v. *Keehler,* 9 Wall. 83; *Boyden* v. *U. S.,* 13 Wal. 17; *Bevans* v. *U. S.,* 13 Wal. 56.

In the *Boyden and Bevans' cases* the Court decides that the receiver of public money is a bailee, but the bond makes him absolutely liable for a loss. In the case of *U. S.* v. *Thomas,* 15 Wall. 337, the Supreme Court, while adhering to the doctrine of Class 1, previously held by that Court, which makes the official a bailee without the protection of a bailee, engrafted on it an exception, relieving on him proof of loss by act of God or the public enemy. Justices Swayne, Miller and Strong, dissented.

When the Supreme Court was called upon to decide on the ownership of interest on public money, held by an official, it necessarily decided that the interest belonged to the government, the statutes having made him a bailee beyond question and the Supreme Court having held him to be so. *U. S.* v. *Mosby,* 133 U. S. 273. The official in that case was a consul who deposited public money in bank and received interest, and while the Court cites no statutes, the statute which governs such a person in sec. 3639 Revised Statutes, which is the same as 5 *U. S. Stat. at Large,* p. 386, and 9 *U. S. at Large,* p. 60, above referred to, under which the Court had decided that the official was a bailee.

These decisions and doctrines of the U. S. Supreme Court have been followed in *Gartley* v. *People,* 24 Col. 155; *Dist.* v. *Morton,* 37 Iowa, 550; *Dist.* v. *Smith,* 39 Iowa, 9; *Com.* v. *Lineberger,* 3 Mont. 231; *Tillinghas* v. *Merrill,* 151 N. Y. 135; *Thompson* v. *Bond,* 30 Ill. 99; *Commonwealth* v. *Comly,* 3 Pa. St. 372; *Nelson* v. *Wichita,* 67 Tex. 647; *Fairchild* v. *Hedges,* 14 Wash. 119.

Class 2a. In these the statutes make the official a bailee and not a debtor, and he is so treated. *State* v. *Houston,* 78 Ala. 576. This was a suit on bond. Plea—Robbery. Held good defense. See also *Cumberland* v. *Pennell,* 69 Me. 357; *City* v. *Mulligan,* 113 Cal. 205; *York* v. *Watson,* 15 S. C. 1; *State* v. *Copeland,* 96 Tenn. 296; *State* v. *McFetridge,* 84 Wis. 473; *State* v. *Gram,* 7 Wyo. 329.

In Class 2*b* we come to that line of cases where the statutes are similar to ours and the Courts hold the official a debtor. *Perly* v. *Muskegon*, 32 Mich. 132; *Muzzy* v. *Shattuck*, 1 Denio, 233; *Hancock* v. *Hazzard*, 12 Cushing, 112; *Bocard* v. *State*, 79 Ind. 270; *Egremont* v. *Benjamin*, 125 Mass. 15; *Rock* v. *Stinger*, 36 Ind. 346; *Colerain* v. *Bell*, 9 Metc. 499.

Some of the authorities, while holding the official absolutely responsible, will cite as authorities for their position cases in both Class 1 and Class 2 (*b*). Thus 37 *Iowa*, 550, follows the *Prescott case*, and also cites as an authority *Muzsy* v. *Shattuck;* and so in some of the other cases in this brief. The reason for this is probably because for a long time it was not clearly understood that the *Prescott case* is not based on any statute, but solely on the bond. Of course the cases in Class 1 and Class 2*b* both hold the official to absolute responsibility, but for different reasons, the one class saying that he is absolutely responsible because, although he is a bailee, public policy makes him also an insurer; the other class because he is in fact a debtor under the statute. It therefore happened that where the case to be decided was one of a loss by the official there was no reason for distinguishing between Class 1 and Class 2 (*b*) as both were authority for absolute responsibility and therefore both were cited. From the fact that a Court cites the *Prescott case* it cannot be therefore certain that it considers the official a bailee as distinguished from a debtor. This is clearly shown by considering cases in which the Court has to pass on the ownership of the fund. Thus the Colorado Court, in 17 *Colorado*, 170, on the question of ownership decides in favor of the official, and yet the same Court on a question of loss, in 24 *Colorado*, 155, cites the *Prescott case* as an authority for its position.

The duties of the clerk in the case at bar are fixed by the provisions of the Code and Constitution. There are no requirements as to how or where he shall keep the money; no power to investigate. In the event of his death the money goes to his personal representatives. Therefore the condition of the bond is that if he pay the public money which is the

license money, on certain days (quarterly), and if he pay the excess of fees over salary and expenses yearly, the bond is to be void. Now it might be argued that where a statute simply requires a collector to pay on a day named, and he give a bond that he will so pay, that such a statute in a suit on the bond does not solve the question as to whether such collector is bailee or debtor ; it might be argued that although the bond is absolute to pay, you have got to look outside of the bond to see whether the duty to pay is not relieved in certain cases, such as a loss of the funds without negligence. We say that it might be so argued, although we believe the cases are against the validity of such argument for the reason that the duty to pay is absolutely created by the statute ; where, however, you have a statute which says that if he does not pay " he shall be subject to suit," and " that his official bond shall be answerable," it must be admitted that such an argument would lose considerable force, for why make such a provision when the right to sue exists without it, unless it be that the intention is that there can be no defense to such suit outside of an accounting.

Where, however, you have a statute which not only says that if he does not pay his bond will be put in suit, but also fixes the amount of recovery in such a suit, to wit, the amount which he has failed to pay, as is done by Code, Art. 17, sec. 8, Const., Art. 15, sec. 1, and Code, Art. 17, sec. 14, then such an argument is totally without force or substantial basis. Especially is this the case if the statute also fix a penalty for a failure to pay as is done by the last-mentioned sections. Our statute allows no excuse for not paying. When you further take into consideration that there is no depository created for the funds collected by the clerk, as there is in the case of the *Tax Collector* (Charter, sec. 54), and of the *Treasurer*, Const., Art. 6, secs. 3–4, that there is no statute requiring the clerk to keep and account for the very same money which he collects, that after collection he can deposit the money in bank, keep it in his safe or on his person or what not, that in case of his death his personal representative pays the State, you

have the case of a debtor, pure and simple. None of the features that are enumerated by the authorities as making an official a debtor is absent. That this was not mere accident will be seen from Constitution of 1867, Art. 6, secs. 3–4, where the State Treasurer is made a bailee with great care.

If the official is a debtor, and by the same transaction that made him a debtor is the owner of the deposits, of course he would be entitled to interest on his own money. It would be merely a feature of his ownership. Accordingly, we find that where the statutes have made the official a debtor he has been allowed the interest collected by him on deposits of public money between accounting days. *State* v. *Walsen*, 17 Colo. 170; *Comm.* v. *Godshaw*, 92 Ky. 435; *Shelton* v. *State*, 53 Ind. 331; *Maloy* v. *Bernalillo*, 52 L. R. A. 126. On the other hand, in cases where the statutes made him a bailee, the Courts have held that such interest belongs to the State, and he must account for it. *State* v. *McFetridge*, 84 Wis. 473; *U. S.* v. *Mosby*, 133 U. S. 273. It would seem that under our statutes there could be little doubt that the Clerk of the Court of Common Pleas was a debtor, and just as little doubt that as such he was entitled to retain this interest.

Any argument founded on the provisions of the Constitution is simply a begging of the question. If in the law as it existed before these words were used, and as it still exists but for them, the official was a debtor, these words can have no bearing upon the interest question. If the law made him a debtor, it did not bother itself with what he might do with the money, by the receipt of which he had become a debtor. Interest on that was not a perquisite, emolument or compensation. It was an incident of his position as a debtor—its privileges and its liabilities.

The law did not by any distinct act authorize the official to receive interest. It suited the public convenience to establish with him the relation of debtor, and it did not bother with any incidents of that relation. If any of these were objectionable, it could change them by statute. It is not well for a State any more than for an individual to change the liability of one

who has already dealt with it, by a legal fiction or a "public policy." The getting or not getting of interest was never considered. It would not be a compensation, perquisite or emolument. When he became a debtor it was for something that he had received. The getting the money was consideration for his becoming a debtor, just as in the case of a bank now.

*If the interest does not belong to the clerk, is the surety responsible on the bond for non-payment of such interest?* The bond contains two conditions : *First.* That the clerk will perform the duties now required of him by law. *Second.* That he will perform the duties hereafter required of him by law.

It will be noted that the second condition is not required by the statute (Charter, sec. 357), and the question has frequently arisen as to whether a bond which contains a condition required by statute, and à condition not so required, is not absolutely void.

The cases on this subject lay down the rule that such a bond is not void but that the condition not required by statute is to be treated as surplusage. *Murfree, Official Bonds*, sec. 61; *U. S.* v. *Myrnderse*, 11 Blatch. 1; *U. S.* v. *Bradley*, 10 Peters, 364; *U. S.* v. *Brown Gilpin* (C. C.) 163; *U. S.* v. *Howell*, 4 Wash. 620; *U. S.* v.    , 1 Brock (C. C.) 195; *State* v. *Findley*, 10 Ohio, 51. And that a suit cannot be maintained for a breach of the condition not required by the statute. *Armstrong* v. *U. S.*, 1 Peters (C. C.) 46; *Rubelman* v. *Grove*, 18 Mo. App. 6.

We therefore only have to consider whether the non-payment of the interest is a breach of the condition "to perform the duties now required of him by law," that is, to perform the duties required of him on the sixteenth day of November, 1895. These duties were fixed by statute.

The bare duty to pay is not sufficient. Thus there is a line of cases in which an official has collected money belonging to the State which it was not his duty to collect but which it was his duty to pay after collection according to the law in general and in which the condition of the bond was to perform duties now required by law or to pay to the State money be-

longing to it or something similar, but these cases hold that the bond is not responsible for the non-payment of such money. *State* v. *Norwood*, 12 Md. 177; *County* v. *Farnum*, 108 Cal. 562; *Renfroe* v. *Colquitt*, 74 Ga. 618; *N. Y.* v. *Pennock*, 60 N. Y. 426; *Jenkins* v. *Simonds*, 29 Ind. 294; *Guthrie* v. *Lowe*, 4 Oklohoma, 287.

The above contention was made in these cases too, but the Courts held that although there was a duty imposed on such an official to pay such money to the State, still the bond was not responsible because there was no duty to collect such money; that such a bond only contemplated the payment of money which was required to be collected. Suppose that Vansant had made a contract with a bank for the payment of interest and the bank had failed and not paid it, could it be contended that the bond would be responsible for such interest? It will be noted that there is no evidence that Vansant had any contract with any of the banks for the payment of interest; the only evidence on this point is that the Mechanics' Bank had paid interest to Gray and continued the custom with Vansant. The payment of the interest to him was purely a voluntary act on the part of the banks and the interest could be paid or not as they saw fit. How in such a case can it be contended that at the date of the bond there was any duty imposed by law on Vansant to pay a sum of money which he was not bound to collect, the collection of which was not contemplated and the payment of which could not be enforced by him? The condition of the bond only applies to the money which the clerk is bound to collect and therefore bound to pay, and not to money which he *may* collect, and which if he does he must pay or else be sued on his implied promise to pay.

The word "law," however, means simply statute law. The duties of the clerk are purely statutory. In the words of Constitution, Art. 4, sec. 10, he performs all the duties as the same now are or may hereafter be regulated by law; and in the terms of his bond he performs these duties as they are now required. One of the duties was to collect license money and turn over a certain portion thereof; this he has done;

another was to collect fees and turn over a certain portion thereof ; this he has done.   The duty to collect interest was not imposed on him, and if he collected it there is no statute which requires him to account for it.   If he must account for it, it is simply because the law implies such an obligation. This obligation, however, is not within the terms of the bond, and his failure to account is, therefore, not a breach of the bond.

*Edgar H. Gans* and *W. Calvin Chestnnt* (with whom was *Isidor Rayner, Attorney-General,* on the brief ), for the appellee.

The notion that public funds do not belong to the State, but that the officer is a debtor, should not be confounded with the absolute obligation of the officer to turn over the moneys received, even though they are lost by theft, or the failure of a depository, or any other reason beyond his control.   This absolute obligation is held by a great number of authorities, but is founded mainly upon the principles of public policy, or upon the superadded obligation found in the bond of the officer.   There are very few cases which hold this absolute obligation to be founded upon the idea that the public officer is inherently a debtor as to the moneys held by him as officer. Some few cases hold his position, but they are badly reasoned, decided mainly on a mistaken application of prior cases, and are not followed in the more thoroughly reasoned cases upon the question.

This notion that the public officer is merely a debtor, and therefore may treat the public moneys as his own, is sometimes fanatically drawn from a principle which undoubtedly is correct, that principle being that public officers, like most other fiduciaries, are not obliged to return to their principals the money in specie in which they receive it ; that is, the precise bank note or precise coin, but under certain conditions of finance, are authorized to return an equivalent.   This arises from the fact that most fiduciaries now bank their funds, and pay by check.   Therefore, in a certain sense, a public officer

is a debtor, and not a technical bailee. In the same sense, a receiver of a Court of equity, a trustee, a guardian, an administrator, a general agent acting for a principal are all debtors and not bailees. But this relation of debtor and creditor is only a qualified relation, and grows simply out of the want of obligation to return the specific thing. It does not carry with it the substantial ownership of the fund, and therefore a receiver or trustee, or guardian, or administrator, or general agent, depositing funds for the person or corporation whom they represent, would be obliged as of course to turn over to those whom they represent any interest or accretion on this fund. *Dalrymple* v. *Gamble*, 68 Md. 156.

Lastly, the authorities best considered, have specifically decided the question that interest on public funds belongs to the State. *State* v. *McFetridge*, 20 L. R. A. 223; 84 Wis. 473; *United States* v. *Mosby*, 133 U. S. 277; *Supervisors* v. *Wandell*, 6 Lansing, N. Y. 33; *Hughes* v. *People*, 82 Ill. 78; *Wheeling* v. *Black*, 25 W. Va. 266; *Hunt* v. *State*, 124 Ind. 306; *Brant on Suretyship*, sec. 534.

The four or five authorities which do hold that interest on public funds belongs to the officer are all of them carefully reviewed and criticised in *State* v. *McFetridge*, 20 L. R. A. 237, 239.

For a complete discussion of the weakness of the position that a public officer is a debtor merely, we refer in addition to the following cases: *State* v. *Copeland*, 31 L. R. A. 845; 96 Tenn. 296; *Wilson* v. *People*, 22 L. R. A. 453; *Healsburg* v. *Mulligan*, 33 L. R. A. 462; 113 Cal. 205; *People* v. *Grann*, 40 L. R. A. 696; 7 Wyo. 329; *United States* v. *Thomas*, 15 Wallace, 337.

This whole subject has recently received very careful and excellent treatment in an article on "*Liability of Public Treasurers for Profits Derived from Public Funds*," by Henry M. Dowling, in the *American Law Review for May–June, 1902*, vol. 36, p. 355, in which the conclusion of the author is as follows: "The present state of the law, therefore, makes it possible to compel the officer to render an account for interest

and profits received by virtue of his office, where the statutes of the State or the action of the officer indicate that the funds remain the property of the public. The same liability should attach even in the absence of statute or conduct of the official working an estoppel, on grounds of common honesty and sound public policy."

· The liability of the surety for the interest is quite plain apart from the provisions of Code, Art. 17, sec. 14. The receipt of the interest by the clerk was *virtute officii*, and not merely *colore officii*. *State* v. *McFetridge*, 84 Wis. 473, 20 L. R. A. 223; *State* v. *Fowler*, 88 Md. 601.

· In those cases which have held that the State is entitled to the interest, the bond of the officer has also been held liable. *Hunt* v. *State*, 124 Ind. 306, 308; *Hughes* v. *People*, 82 Ill. 78; *Wheeling* v. *Black*, 25 W. Va. 266; *Supervisors* v. *Wandel*, 6 Lansing (N. Y.) 33.

It was argued by the defendants that if the surety is liable for interest on deposits in bank he would be liable for any profits by the clerk resulting from speculation with the public funds. This, however, does not necessarily follow. Speculation with public funds is a conversion thereof for which a prosecution for embezzlement would lie. But deposit of funds in bank, apart from statutory prohibition, is not illegal. *State* v. *Gramm* (Wyoming), 40 L. R. A. 705; *Bardsley* v. *Sternberg*, 18 Wash. 612; *Fairchild* v. *Hedges* (Wash.), 31 L. R. A. 851; *Comstock* v. *Gage*, 91 Ill. 328; *Moulton* v. *McLean*, 5 Col. App. 454; *Estate of Law*, 14 L. R. A. 103; *In re House Resol.*, 12 Col. 395; *State* v. *McFetridge*, 84 Wis. 473; *Mason* v. *Directors*, 126 Pa. St. 445; *State* v. *Copeland*, 96 Tenn. 296; *Ramsay* v. *Whitbock*, 81 Ill. App. 210.

It was also argued that the bond is not liable, because the condition of the bond is " for the faithful performance of all the duties now required of said clerk *by law;*" and there is no *statute* requiring the payment of interest by the clerk to the State. It is, however, evident that the phrase " by law " here includes general law as well as statutes. *State* v. *Archer*, 73 Md. 44.

Boyd, J., delivered the opinion of the Court.

This is a suit on the bond of James M. Vansant, former Clerk of the Court of Common Pleas of Baltimore City, to recover interest alleged to have been received by him on sums of money collected by him, by virtue of his office as such clerk, on account of the State. The declaration alleges that he so deposited said sums of money in bank that they drew large rates of interest during the time the bond was in force, to wit, from the 21st day of November, 1895, to the 10th day of December, 1897. The condition of the bond was that if said Vansant "faithfully performs the duties now required of him by law, or which may hereafter be required of him by law, then the above obligation shall be void," etc. The local law of Baltimore City provides for bonds to be given by the clerks of the Courts of that city in the penalties therein named (that of the Clerk of the Court of Common Pleas being fifty thousand dollars) "each of said bonds conditioned for the faithful performance of all the duties now required of each of said clerks by law." The State does not rely upon the latter part of the condition, and it is therefore unnecessary to consider the effect of the language, "or which may here-after be required of him by law," excepting to say that it cannot invalidate the other portion of the bond. There was a demurrer to the declaration, which was overruled, demurrers were filed to the first, second, third, fourth and fifth pleas, which were sustained, and a number of prayers were passed on by the Court, but the question involved can be considered under three heads.

1. Can the State require Mr. Vansant to account for interest received by him on money he collected for the State, and which he deposited in bank until the time arrived for him to pay it over?

The record shows that he opened all the accounts in bank as Clerk of the Court of Common Pleas and between April 13th, 1896, and June 2nd of that year, he deposited in the American National Bank of Baltimore moneys received by him as such clerk, amounting to $174,000, and from April 9th

to May 27, 1897, he deposited in that bank $173,000. Be-
tween May 1st and June 3rd, 1896, he deposited in the Third
National Bank of Baltimore $37,000 and from April 26th to
the 26th day of May, 1897, he deposited in that bank $38,-
207.05. He remitted all of said sums to the treasurer of the
State on the 30th day of June of those respective years in
payment of license moneys. In the Mechanic's National
Bank of Baltimore he opened one account in the name of
"James M. Vansant, Clerk," and another as "James M. Van-
sant, Clerk, Special," in each of the two years. The total
amounts deposited in that bank amounted to $1,025,107.10,
of which it was proven he remitted to the treasurer $985,-
835.99, the most of it being sent the latter part of June. The
cashiers of the American National and the Third National
Bank paid him interest by their checks and the Mechanic's
Bank credited an individual account he kept there with
interest at the rate of two *per centum per annum* on daily bal-
ances. That was also the rate allowed him by the American
National and one *per centum per annum* on daily balances was
paid him by the Third National.

It is contended by the appellants that the clerk was the
absolute owner of these funds while he held them; that he
was simply a debtor to the State, under obligation to account
for the principal he received at such times as the law required,
and hence was entitled to any interest the funds earned while
they were thus held by him. Counsel for the appellants re-
ferred to the distinction made by the authorities between cases
where the officials were deemed bailees and those in which
they were held to be debtors, and seek to show that under
our laws the relation of this clerk to the State was merely that
of debtor, subject only to such responsibilities as ordinarily
attach to one occupying that position. This case, however,
does not depend upon the question whether this clerk was a
technical bailee or a debtor, but conceding that he belongs to
the latter class, as distinguished from the former, is that the
only relation he bore to the State? It does not necessarily
follow that because he was a debtor to the State he was the

absolute owner of these funds. There can be no doubt that he was not required to return to the State the identical moneys which he received, and as our statutes are silent as to how or where he shall keep them, before the time arrives he is required to pay them over, it must be conceded that it was not a breach of trust for such officer to deposit them in bank. Indeed we may assume that the law contemplated that he would deposit them in bank, or some other equally safe depository, as no prudent man, be he a private citizen or public officer, would at this day be guilty of the folly of keeping such large sums of money as this clerk handled in his own custody. We are not now concerned, however, as to how far such officer would be responsible in the event of a failure of a bank in which he had deposited public moneys received by him, if he exercised proper precaution in selection of it for such deposits. But, although he was not a technical bailee, and was in a certain sense a debtor, did he have such absolute control over these funds as to enable him to use them as he pleased for his own benefit? Sec. 38 of Art. 4 of the Constitution of the State provides that the Clerk of the Court of Common Pleas shall have authority to issue all marriage and other licenses required by law within the city, subject to such provisions as are now, or may be prescribed by law, and the Comptroller is required by statute to provide him with blank licenses, upon his requisition. By Art. 17 of the Code of Public General Laws, every clerk must transmit to the Comptroller on or before the first Monday of June, and the first Monday of December, "a list and account under oath of all *public money* received by him" (sec. 7), and on the first Monday of March, June, September and December in each year to "pay to the treasurer all *public money* which he may have received" (sec. 8), and "for receiving and paying over all *public money* received for licenses, fines or otherwise, the several clerks of Courts of this State shall receive five *per centum*, except the Clerk of the Court of Common Pleas of the city of Baltimore, who shall receive one *per centum* commissions for receiving and paying over such *public money.*" These sections refer to

it as "*public money*" when he receives it, when he reports it and when he pays it over and by sec. 8, if he fails to pay it within thirty days after the times therein mentioned, his bond may be put in suit, interest at the rate of ten *per centum* per annum is recoverable " from the date or dates when the same became payable," his commissions are forfeited and he may be removed from office. He receives the money by virtue of the fact that he is clerk, and as such authorized by law to receive it. His failure to pay it over, as required by law, not only subjects him to the penalties we have mentioned, but by sec. 47 of Art. 27 of the Code, he is to be deemed a defaulter and upon conviction to be confined in the penitentiary. In *State* v. *Nicholson*, 67 Md. 1, this Court not only sustained that law as not in conflict with the Constitution which abolishes imprisonment for debt, but in passing on it said : " Any other construction would deprive the Legislature of all power to punish defaulting officials for the appropriation by them of *money received and held in trust for the State* "—thus showing that public officials who receive such money were deemed to hold it in trust for the State. And why should not a public officer, whose duty it is to collect the State's money and pay it over to the treasurer, not be said to hold it in a fiduciary capacity ? This State must collect its revenues through its agents—certain officials, including the clerks, are made its agents for that purpose. An agent of an individual, who receives his principal's money, is in a sense a debtor, but that does not authorize him to use the money for his own benefit and if he does he can be required to account for it, 1 *Ency. of Law* (2nd ed.), 1072. So may a trustee or administrator be a debtor to his *cestui que trust*, but he does not necessarily discharge his obligation to him by simply paying over the principal he received, but may be required to pay interest, if the fund has earned it. *Dalrymple* v. *Gamble*, 68 Md. 156. And although this clerk does not occupy the precise relation that such agent, trustee or administrator does to his *cestui que trust*, it is of that nature in respect to this public money held by him and the principle above stated is applicable to him, in so far as he attempts to use the State's money for his own benefit.

Then again sec. 80 of Art. 27 makes any person holding office in this State, "who shall fraudulently embezzle, or appropriate to his own use money, funds or evidences of debt, which he is by law bound to pay over, account for, or deliver to the treasurer of this State, guilty of a misdemeanor. Is it to be said that if this clerk had fraudulently appropriated to his own use some part of this money before the time he was required to pay it over, and then did not account for it, he could not have been prosecuted? Clearly not, and yet if he was the absolute owner of it, how could he be guilty of embezzlement? That term implies the fraudulent appropriation or conversion of the property of *another* by one who has the rightful possession, or is intrusted with it. In construing this statute in *State* v. *Archer*, 73 Md. 59, this Court said : " These funds belong to the State, and are held by him as treasurer," and, upon his failure to pay them over to his successor, he was criminally responsible "for the embezzlement of such funds by him while in office," and *" the crime was complete when he embezzled or appropriated the same to his own use."* It may be admitted that under the Constitution a State Treasurer occupies a somewhat different relation to the public moneys under his control from what a clerk does, but this statute is applicable to the latter, as well as the former. It would be a unique law if it punished the officer for not paying over the money at the time he was required to do so, but permitted him to do as he pleased with it until that time. Sec. 47 of Art. 27, above referred to, is intended to punish him for being a defaulter, which he would not be until he failed to pay the money over, as therein provided, but if he fraudulently embezzled, or appropriated to his own use the money before the dates named for paying it over, he could undoubtedly be prosecuted. There might be difficulty in proving it, but it is possible that such facts could be shown as would establish that · charge. So we think it clear that a clerk of Court who thus receives public money is not the absolute owner of the fund, pending the arrival of the time when he is required by law to pay it over, but he occupies a position of trust with reference to it, as indicated by the statutes we have referred to.

But his liability to account for this interest does not depend alone upon what we have said. Sec. 45 of Art. 3 of the Constitution limits the amount of compensation to clerks of Courts in Baltimore City to thirty-five hundred dollars a year, over and above office expenses and compensation to assistants. Sec. 1 of Art. 15 requires every person holding office created by or existing under the Constitution or laws of the State (except justices of the peace, constables and coroners) "whose pay or compensation is derived from fees or moneys coming into his hands for the discharge of his official duties, "*or in any way growing out of or connected with his office*," to keep a book in which such sums shall be entered "and each of the said officers, when the amount received by him for the year shall exceed the sum which he is by law entitled to retain as his salary or compensation for the discharge of his duties, and for the expenses of his office, shall yearly pay over to the treasurer of the State the amount of such excess." Sec. 37 of Art. 4, in speaking of clerks of Baltimore City, provides that "the salary of each of the said clerks shall be thirty-five hundred dollars a year, payable only out of the fees and receipts collected by the clerks of said city, *and they shall be entitled to no other perquisites or compensation*." Sec. 12 of Art. 17 of the Code requires every clerk "annually to return to the Comptroller a full and accurate account of all his fees, *emoluments and receipts*, whether on his own account as such clerk, or for the State, city or county," and by sec. 14 of Art. 17 "The official bond of such clerk shall be answerable for the *emoluments* of his office over and above the sum prescribed by the Constitution," and he is subject to a fine of one thousand dollars for failure or neglect to pay or account for the excess. If there be any doubt about the responsibility of this clerk for interest he received on other grounds, these provisions we have last quoted seem to conclusively settle it. These funds were paid to him for the use of the State, because he was Clerk of the Court of Common Pleas, and as such he was authorized by law to receive them. They were deposited in the banks in his name

as clerk. If he had not been such clerk he would not have had them. Can it be said then that the interest received by him was not "*in any way growing out of or connected with his office?*" Most assuredly not, and the Constitution expressly requires money so received to be accounted for. This Court said in *Banks* v. *State*, 60 Md. 305: "If, in the language of the Constitution, the money came into his hands 'in any way growing out of or connected with his office,' he is required to account for it as part of the income or receipts of the office."

Then the provision in the Constitution limiting the salary to thirty-five hundred dollars concludes by saying "and they shall be entitled to *no other perquisites* or compensation." In *Bouvier's Law Dictionary*, after giving its meaning in its most extensive sense, "perquisites," is thus defined : "In a more limited sense, it means something gained by a place or office beyond the regular salary or fee," and it is apparent that this was the sense in which it was used in the Constitution, as is shown by the context. So "emolument" is said in *Apple* v. *Crawford County*, 105 Pa. St. 303, to import "any perquisite, advantage, profit, or gain arising from the possession of an office," and, as we have seen, the clerk is expressly required to account for "emoluments."

Independent of any authorities on the subject, there would seem therefore to be but little room to question the liability of the clerk for interest received by him on funds collected by him for the use of the State and deposited in bank. It would be a most dangerous practice to sanction, to permit him to retain such interest, and if the law were otherwise than what we determine it to be, the safety of the public money would demand additional legislation on the subject. If a clerk can deposit money in bank and receive one or two *per centum* interest on it for his own use, what would hinder him from lending it to individuals or other corporations at a higher rate of interest? The higher the interest offered the greater the temptation would there be for him to lend it and if that practice was sanctioned, the State's money would be greatly jeopardized. It is no answer to say that the clerk has given bond,

for in the case now under consideration the penalty of the bond was fifty thousand dollars, while the clerk at times had in the three banks considerably over half a million dollars. It is true that if he made default he might be prosecuted criminally, but a fifty thousand dollar bond and imprisonment of the clerk would not protect the State, if a half million dollars of its money was in the hands of borrowers who had become financially irresponsible. The temptation to get higher interest is illustrated in this case, where it is shown that the bank which paid one *per centum* had an insignificant portion of these funds, as compared with those which paid two *per centum.* Then, too, the position taken by the appellants would be a great inducement to postpone the payment of the public moneys to the State as long as possible. Clerks are required by the statute to pay over what they have received on the first Monday in March, June, September and December, and this record shows that this clerk did not pay over these large amounts until the end of June, and he was getting interest on them for nearly a month after they were payable by the very terms of the statute. It is true that the statute only provides for the penalties if the public money is not paid within thirty days after the dates named, but it was payable to the State on those days, and especially in June, when the bulk of the license money is to be accounted for it should be paid promptly, and there should be no such inducement to postpone payment as there would be if clerks and other officers are permitted to profit by keeping the money in bank thirty days after it was payable.

We do not mean to impute improper motives to Mr. Vansant, as he seems to have followed a custom which had grown up in Baltimore, and he doubtless believed he was entitled to the interest. In passing we might remark here that the fact that there was such a custom, and, even if it be true as alleged in one of the pleas, that it was recognized and understood by the State's officials, would not relieve him. There was no statute authorizing it or sanctioning it, and, as was said in *State* v. *McFetridge*, 20 L. R. A. 240 (s. c., 84 Wis. 472). "If every

citizen and officer of the State knew that the practice prevailed, it would be difficult to show that a usage which takes from the State, and gives to one of its officers, without authority of law, large sums of money belonging to the State, could be upheld as a valid custom."

But we are not lacking authorities to sustain our conclusion. There are some to the contrary, but without stopping to discuss them, it is sufficient to say that in so far as they are in conflict with what we have said (and some of them can be distinguished when our Constitution and statutes are considered) we must decline to follow them. Some of those we will cite as in accord with our views were controlled in part by statutes, but we deem the following to be applicable and, certainly in most respects, founded on safer and better reasoning than those adopting the contrary view. *State* v. *McFetridge, supra; Eshelby* v. *Board of Education*, 63 N. E. Rep. 586 (Supreme Court of Ohio); *United States* v. *Mosby*, 133 U. S. 277; *Supervisors* v. *Wandell*, 6 Lansing, 33 (affirmed in 59 N. Y. 645); *Hughes* v. *People*, 82 Ill. 78.

2. Having decided that the clerk is responsible, is the surety on his bond liable for the interest thus received by him?

We are of the opinion that it is. From what we have said, it will be seen that we deem this interest to be an "emolument" of the office. Sec. 14 of Art. 17 of the Code expressly makes the bond of the clerk "answerable for the emoluments of his office over and above the sum prescribed by the Constitution." The record shows that in each year he did make return of the excess of fees and emoluments, but did not return any of the interest. We might with propriety rest our decision on that provision, but that is not all. There was no law in this State prohibiting the clerk from depositing the public moneys received by him in the banks. On the contrary, as we said above, it might be assumed that it was contemplated that he would do so. When he thus deposited them, he did not only what he had the right to do, but what was clearly his duty to do—to put them in some safe place until he remitted to the treasurer, and there could perhaps be no safer place than banks

of proper financial standing. He therefore not only received them, but deposited them in bank *virtute officii*, and, being of opinion that he was not the owner of them, such gains as attached to them by way of accretion or increment became a part of them and must be accounted for to the State. It is true the law did not require him to place the money on interest, but it did not prohibit him from doing so, and, as he did, the interest should go with and become a part of the principal.

This case does not present such questions as might arise if the clerk had used the money in speculation and earned profits in that way. That might be such a diversion of the public funds as would amount to embezzlement, but the receipt of this money was legal and its deposit in bank was certainly not illegal, and everything up to that point it must be admitted was done *virtute officii*, and not merely *colore officii*. The deposits were not made in his individual capacity, but as clerk, and the interest was paid on those deposits. He was required to do nothing more to earn it—indeed he claims he did not even have any agreement with the banks that interest should be paid, but they simply followed the custom with former clerks. Upon what principle then can it be said that it was not received by virtue of his office? It being so received, and the bond being comprehensive enough to include it, the surety is liable. *State* v. *Fowler*, 88 Md. 601. In cases holding the State entitled to the interest, the sureties on the bond have generally been held liable. *State* v. *McFetridge, supra; Hughes* v. *People, supra; Wheeling* v. *Black*, 25 W. Va. 266; *Hunt* v. *State*, 124 Ind. 306.

3. The next point to be considered is: Having determined that the clerk and surety are liable for interest received by him, was the case properly proven?

The State called Mr. Vansant as a witness and he declined to testify on the ground that his answers would tend to incriminate him, and for the same reason he declined to produce his books and checks. The Court below excused him and the State then proved his deposits in the official accounts in the three banks, what he had remitted to the treasurer and the

interest that had been paid him. It was shown that he paid the treasurer all of the sums deposited in the American National and in the Third National Banks, and $985,835.99 of the $1,025,107.10 deposited in the Mechanics' National Bank. There was also evidence to prove that all the expenses of the office were paid out of these accounts, excepting some small disbursements for petty expenses. Interest, amounting to $4,951.80, on these deposits was paid to him and the verdict was for that amount. There can be no doubt that the amounts received from the American National and the Third National Banks were sufficiently proven to belong to the State. The record shows that those accounts were opened by Mr. Vansant, as Clerk of the Court of Common Pleas, and he remitted all of the sums deposited in them in payment of license money. The question as to the portion of the deposits in the Mechanics' National Bank not remitted to the treasurer is presented by the plaintiff's third prayer. By that the jury was instructed that the plaintiff was entitled to recover the whole of the amount of interest paid Vansant on the two accounts in that bank, unless they found that some portion of said accounts on which interest was so allowed, was not money received by him for and on account of the State, and "if they find that said Vansant, as clerk, mingled in said accounts moneys not belonging to the State of Maryland, with public moneys, then the burden is on the defendants to show what portion, if any, of the interest so allowed on the whole of said accounts was interest allowed on items of deposit in said account not belonging to the State of Maryland." Under the circumstances of this case, we think that prayer was properly granted. It is proven that he, as Clerk of the Court of Common Pleas, opened these two accounts and deposited in them from time to time moneys received by him as such clerk, and paid all of them to the treasurer excepting about forty thousand dollars, which was less than four per cent of the total amount deposited in that bank, and hence if any interest was paid on any part of that it was a very small amount. It was impossible for the State, without the aid of the clerk and his

books, to ascertain precisely what, if any, interest was paid him on account of the amounts not due the State, which were included in those accounts, and he refused to give that aid. We have already said that the clerk occupied a fiduciary relation to the State, although not a technical trustee. As was said in *Englar* v. *Offut*, 70 Md. 87, "if a trustee or fiduciary mixes trust funds with his own, the whole will be treated as trust property, except so far as he may be able to distinguish what is his from that which belongs to the trust." That principle should be applied in a case of this character, and a public officer should not be permitted to defeat recovery of money due the State by so mingling it with other money as to make it impossible to determine the precise sum that belongs to the State. If he does so mingle it, the burden is properly placed on him to explain, and if he refuses to do so, the presumption should be against him. See also *Preston* v. *Leighton*, 6 Md. 97. It was his duty to report to the Comptroller the amount of the interest he had received, as part of the emoluments of his office, and having failed to do so, he cannot complain of having this burden put on him at the trial. Moreover, if he received, *as clerk*, interest on money due other parties he might be chargeable with it as an emolument or perquisite of his office and hence required to account for it on that ground, in the absence of some proof that it was his own, which would not be probable, as the record shows that he kept an individual account in that bank. We are therefore of the opinion that the State made out a *prima facie* right to the interest received by the clerk, and in the absence of any proof by the appellants that it was not entitled to some part of it, they cannot complain of this ruling of the Court. We do not deem it necessary to refer to the other prayers, or to other points raised, as what we have said is sufficient to show that we find no error in the Court's rulings and the judgment will be affirmed.

> *Judgment affirmed, appellants to pay the costs.*

(Decided December 3rd, 1902.)