# THE AMERICAN BONDING CO. OF BALTIMORE *vs.* THE NATIONAL MECHANICS BANK OF BALTIMORE.

*Principal and Surety—Subrogation of Surety to Rights of Creditor Against Third Persons—Unlawful Payment of Interest on Public Moneys by Bank to Clerk of Court—Liability of Bank to Surety on Bond of Clerk—Subrogation to State's Exemption from Limitations.*

A surety who has paid the debt of his principal is entitled to be subrogated to all the rights of the creditor against the principal and also to the rights of the creditor against other persons who were liable for the debt.

When the principal is a fiduciary and has been guilty of a breach of trust, his surety upon paying the debt is subrogated to the remedies of the *cestui que trust* against those who participated in the breach of trust.

A clerk of Court deposited in a bank money collected by him for the State from license fees. In pursuance of its custom the bank allowed interest on the deposit to the clerk which was credited to his personal account and used by him. In an action by the State against the surety on the clerk's bond it was adjudicated that the interest on the money

collected by the clerk was an emolument of his office to which the State was entitled and that his failure to account for the same was a breach of duty for which his bond was liable, and judgment was rendered for the amount of interest thus received. The surety satisfied the judgment and then filed the bill in this case against the bank to recover the amount so paid. *Held*, that the bank so participated in the clerk's diversion to his own use of the interest on the deposits as to make it equally guilty with him of the breach of duty which in view of his relation to the deposits was a breach of trust ; that the State could have recovered from the bank the amount of the diverted interest and the surety having paid to the State the amount of its loss is entitled to be subrogated to its rights against the bank.

*Held* further, that the surety being entitled to all the rights of the State against the bank is entitled to the benefit of the exemption of the State from the operation of the Statute of Limitations.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (DOBLER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*W. Irvine Cross* and *Edward Duffy* (with whom were *Cowen, Cross & Bond* on the brief), for the appellant.

*Randolph Barton* and *Randolph Barton, Jr.*, (with whom were *Ambler & Stewart* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

On October 18th, 1902, the State of Maryland recovered a judgment of $4,951.80 against The American Bonding Company of Baltimore as the surety on the official bond of James M. Vansant as Clerk of the Court of Common Pleas of Baltimore City. The breach for which the suit was brought was the failure by Vansant to account for and pay over to the State certain money which had been paid to him by various banks as interest on funds received by him in his official capacity and kept on deposit with such banks. Of the money which he so received as interest on funds belonging to the State the sum of $3,774.70 was paid to him by the present appellee, The National Mechanics Bank of Baltimore.

The American Bonding Company as surety paid the judgment to the State and then filed the present bill to recover $3,774.70 of it from the National Mechanics Bank.

The bill alleges the appointment of Vansant as clerk on the 15th of November, 1895, the filing by him of an official bond with the Bonding Company as sole surety in the penalty of $50,000 and the retention of the office by him until December 1st, 1897.   It also avers that he on or about November 18th, 1895, at the solicitation of the appellee bank and in pursuance of his official duties opened an account with it in the name of "James M. Vansant, Clerk," in which he from time to time deposited money belonging to the State of Maryland, collected by him in the performance of his official duties, and that in addition he, in each year, opened an account with the same bank entitled "James M. Vansant, Clerk Special," in which he deposited the license fees received by him as clerk and that this money was afterwards transferred by him to the first-mentioned account standing in his name as James M. Vansant, Clerk.   That Vansant during his occupancy of the position of clerk also kept an individual and personal account in said bank in his own name.

The bill then alleges that the bank, well knowing that the moneys deposited in the two official accounts of Vansant as clerk belonged to the State of Maryland and had been collected by him in the performance of his official duties, allowed and paid to him individually interest at about the rate of two per cent per annum on the daily balances of the said State funds, and the bill states in detail the amounts of interest so allowed, amounting in all to $3,774.70, with the respective dates of the several allowances.   It is alleged that the said payment was accomplished by the bank's crediting the interest on the public funds to the individual account of Vansant and permitting him to draw it out on his individual check and misappropriate it, and that it was the intention of the bank in so doing to pay such interest on the public funds to him for his own personal use.   It is also alleged that the interest was so allowed by the bank in pursuance of its habit of dealing with

various previous clerks of the same Court who had deposited with it the public funds under their charge.

It is then alleged that Vansant failed to account for and pay over to the State the interest so allowed to him on the public moneys by the bank in consequence of which the suit was brought by the State against the Bonding Company as his surety and the judgment already mentioned· was recovered against it and that it satisfied and paid the same to the State. That the judgment was thereupon according to law entered to the use of the Bonding Company and it caused execution to issue thereon which was returned *nulla bona* and that Vansant is insolvent.

The bill then charges that the bank, by knowingly paying to Vansant individually interest on the public funds deposited with it by him, participated in the misapplication thus accomplished of such interest and thereby became and was responsible to the State of Maryland for the amount of the interest, and that the Bonding Company by the payment of the judgment recovered against it for the entire interest so misappropriated was subrogated to the right of the State against the bank and is now entitled to recover from the latter the $3,774.70 interest paid by it which forms part of the amount of the judgment.    The prayer of the bill is for a decree against the defendant for the $3,774.70 and for further relief.

The answer admits the deposit in the bank of the public money by Vansant to his credit as clerk as in the bill alleged and the payment to him individually of the several sums of money in the bill charged and at the times therein set forth, and also the recovery of the judgment by the State against the appellant and the satisfaction thereof by it. It denies however that the money was paid in pursuance of any agreement but asserts that it was "spontaneously and gratuitously" credited to Vansant's personal account.    The answer then by way of explanation of the transaction asserts that for more than thirty years prior to the institution of the suit it had been the custom of the banks, including the appellee, in which the Clerk of the Court of Common Pleas deposited the

public money collected by him, to allow to the clerk making such deposits "a sum of money which was equivalent to what would have been interest at the rate of about 2 per cent per annum" thereon. That such an allowance had been made to Gray the clerk who preceded Vansant and that when the latter came into office the same custom had been followed by the appellee with him and that in that way the money referred to in the bill had from time to time been placed to his individual account and he had been allowed to check it out for his own use. The answer asserts that such custom of dealing with the said clerks by the banks was well known to and acquiesced in by the State and its officers and also by the appellant at the time it became surety upon Vansant's bond and that by reason thereof the State would have been estopped from making any claim against the appellee for the money so paid by it to Vansant and that the appellant is for the same reason estopped from asserting the claim set up by it in the present suit.

Charles Hahn, the paying teller of the appellee testified in the Court below, that not wishing the bank to lose the clerk's account, he called to see Vansant about the time of his appointment to the clerkship but did not find him in his office. He however saw several other bank men in the office for the same purpose as his own whereupon he, in order "to clinch the matter," wrote to Vansant as follows : "My dear Vansant: I am happy to congratulate you on your appointment which I heard this morning with satisfaction. I called to talk with you as to the 'clerk's account' with the Mechanics Bank where you now have it. We desire the cordial relation to continue and you may ever command us as of old. If convenient we would be pleased to have you call at bank and see our Mr. Ramsay, president of the bank. Yours, Charles Hahn, paying teller."

John B. Ramsay, the president of the bank testified that he had no recollection of Vansant's having seen him in reference to the allowance of the 2 per cent on the amount of public money to be kept on deposit with the bank or of having

made any agreement on the subject, but he frankly admitted that 2 per cent on those deposits had been paid by the bank to Vansant individually in return for the use of the State money and said that it had been done "along the line of the custom."

James Bond, the president of the appellant testified that he did not know when his company became surety on Vansant's bond that interest was allowed to the clerk on deposits of State money, but he said that a general impression or under-standing prevailed that such was the case, as he expressed it, "it was in the air."

It has already been decided by us in *Vansant* v. *The State*, 96 Md. 110, that under the circumstances appearing from the record in this case the sums of money thus from time to time paid by the bank to Vansant individually were the property of the State and that it was his duty to account to the State for them. We also held in that case that his failure to account for them constituted a breach of his official duty for which the surety on his bond was liable, and affirmed the judgment which the State had obtained against the surety for the damages sustained by the breach.

The question now to be determined is whether the surety on the clerk's bond having satisfied the State's judgment is entitled to be put by way of subrogation in the place of the State and granted a decree against the Mechanics Bank, the present appellee, for the $3,774.70 of the State's money which it paid to Vansant individually and which was included in the amount of the judgment.

The theory of the appellant's case is that the bank so aided and participated in Vansant's diversion to his own use of the interest on the deposits as to have been equally guilty with him of the breach of duty thereby made, which, in view of his relation to the deposits, amounted to a breach of trust. That under those circumstances the State could have recovered from the bank the amount of the diverted interest and that the appellant, having as surety satisfied to the State the amount of its loss, is entitled to be subrogated to its rights against the bank in the premises.

As we said in *Duckett* v. *Mechanics Bank*, 86 Md. 403, " There can be no dispute that as a general principle all persons who knowingly participate or aid in committing a breach of trust are responsible for the money and may be compelled to replace the fund which they have been instrumental in diverting." * * * "There is in such instances no primary or secondary liability as respects the parties guilty of or participating in the breach of trust, because all are equally amenable." The participation by the bank in the breach of trust in that case consisted in permitting the trustee to deposit to his own credit a check drawn to the order of its cashier, containing on its face the words "*to deposit to the credit of Henry W. Claggett, trustee*," and then to draw out of bank the amount of the credit by his individual checks. The trustee converted the money to his own use. The words which we have quoted as appearing on the check were held to have been an explicit notice to the bank that Claggett was not the owner of the money and that it should not be placed to his individual credit, and to have thus imparted to the bank the requisite knowledge to affect it with responsibility. We cited in that connection the cases of *Bundy* v. *Monticello Co.*, 84 Ind. 119, and *Am. Ex. Bank* v. *Mining Co.*, 165 Ill. 109.

In *Vansant* v. *The State*, 96 Md. 110, when considering the very transactions now before us, we determined that Vansant as clerk " held a fiduciary relation to the State, although not a technical trustee " and that although he did not occupy the precise relation that a trustee or administrator does to his *cestui que trust* his position was one of that nature in respect to this public money held by him and that he was to be deemed as holding it in trust for the State. We think it necessarily follows that he and the bank, which had undoubtedly knowledge of the State's ownership of the funds deposited by him as clerk, should be held liable, in dealing with those funds and with the sums allowed as interest thereon or as a return for their use, to the same measurè of responsibility that was applied to the dealings of the bank with the trust fund in *Duckett's case*. In that case the successor in trust of the trustee who

had converted the trust fund to his own use, was allowed to recover the amount of the converted fund from the bank. Upon the same principles the State would have been able to recover from the present appellee the interest on public money which Vansant with its aid converted to his use.

It remains to be determined whether the appellant having as surety paid to the State the amount of its money thus converted by Vansant to his own use is entitled to be subrogated to the rights of the State and recover from the appellee the $3,774.70 of that money which consisted of interest paid by it to him on the State's deposits.

The general equitable doctrine of subrogation, by which a surety who has paid the debt of his principal becomes entitled to all of the rights of the creditor against the principal debtor and to the benefit of all securities for the debt held by the former against the latter, is universally recognized. We are however in this case asked to go a step further and hold that under such circumstances the right of subrogation is not restricted to the rights and remedies to which the creditor was entitled against the principal but extends to his rights and remedies against other persons who were liable for the debt which has been satisfied by the surety. We are not aware that this Court has ever been called upon to pass on that precise proposition, but the expressions which it has used in defining the right of subrogation are broad enough to include the principle upon which the proposition rests. In *Orem* v. *Wrightson,* 51 Md. 31, the Court say of the doctrine of subrogation: "It is not founded on contract but has its origin in a sense of natural justice. So soon as a surety pays the debt of the principal debtor equity subrogates him to the place of the creditor and gives him *every right, lien and security to which the creditor could have resorted for the payment of his debt.*" In *Ghiselin* v. *Ferguson,* 4 H. & J. 521, it is said that if a surety paying the debt of his principal shall be considered to stand in the place of the creditor "for any one purpose to answer the ends of justice the Court cannot understand why he may not be *so considered for every purpose where the same ends are in view.*"

That the doctrine of subrogation does go to the extent of giving to the surety, who has paid the debt of the principal, the benefit of the rights and remedies of the creditor against all persons who were liable for the debt is both asserted by text writers and sustained by the authority of many decided cases.  *Baylies on Sureties and Guarantors*, p. 358; *Rooker* v. *Benson*, 83 Ind. 250; *McCormick* v. *Irwin*, 35 Pa. St. 111; *Blake* v. *Traders' Bank*, 145 Mass. 13.  This is especially held to be true of the sureties of a fiduciary who are compelled to answer for his breach of trust and they have repeatedly been subrogated to the rights and remedies of both the trustee and the *cestui que trust* against the fiduciary and those participating in the wrongful act.  *Sheldon on Subrogation*, sec. 89; *Am. & Eng. Ency. of Law*, vol. 24, p. 216, *et seq.* and cases there cited.  *Wilson* v. *Doster*, 7 Ired. Eq. 231; *Edmunds* v. *Venable*, 1 Patton & Heath, 121; *Boone Co. Bank* v. *Byrum*, 56 S. W. R. 532; *Blake* v. *Traders' Natl. Bank*, *supra.*

The facts of the present case in our opinion bring it within the class of cases last referred to and we think both upon principle and authority the appellant should be subrogated to the right of the State to recover from the appellee as a participant in Vansant's breach of trust in receiving to his personal credit and converting to his own use the $3,774.70 allowed to him by the appellee in return for the use of the State's money deposited to his credit as Clerk of the Court of Common Pleas.  Without the aid of the appellee the $3,774.70 never would have been deposited to his individual credit, and could not have been drawn out by his individual check.  Not only was the first step in the diversion of this money, which of right belonged to the State, taken by the appellee in entering it to Vansant's credit, but in view of the facts surrounding the deposit of the public funds with the appellee, the letter written to him by its teller amounted to a virtual invitation to him to deposit those funds with it for a consideration to be enjoyed by him as an individual.

The practice and custom of the appellee and other banks in allowing clerks of Court interest for their individual use on

deposits of public funds set up in the answer can afford no defense to the appellee.    It was distinctly held in *Vansant* v. *The State, supra,* that such custom interposed no obstacle to a recovery by the State of the very money now in question from Vansant and the same principle must be applied to the present suit to enforce by way of subrogation the State's right to recover it from the appellee as a participant in Vansant's breach of trust.

The appellant being subrogated to the right of the State in respect to its claim against the appellee is entitled to the benefit of every right, lien and security which existed in favor of the State in reference to the claim.    Among these may properly be classed the State's exemption from the running of limitations against it.    In *Orem* v. *Wrightson, supra,* it was held that a surety who had paid the debt of the principal to the State was entitled to enjoy by subrogation the right of *priority* over other creditors in the distribution of the assets of the principal debtor which would have existed in favor of the State as a creditor had the claim been asserted by it.    The reasoning which led our predecessors to the conclusion there arrived at requires us to hold that the present appellant is entitled to stand in the State's position in reference to its claim against the appellee and enjoy its exemption from the operation of the Statute of Limitations.

For the reasons stated by us the decree appealed from must be reversed and as it is apparent that the appellant is entitled to recover we will not remand the case but will enter judgment in its favor for the principal amount of its claim.

> *Decree reversed and decree entered in this Court in favor of the appellant against the appellee for $3,774.70 with interest from this date and costs above and below.*

(Decided July 1st, 1903 )