## HOPE H. BARROLL, Trustee vs. PERE T. FOR-MAN et al.

*Ratification of Auditor's Account—Liability of Co-trustees*
*—Misappropriation of Money by one Trustee—Un-*
*authorized Payments to One of Two Trustees—Bona*
*Fide Purchaser of Promissory Note—Liability of Bank*
*for Aiding Trustee in Breach of Trust.*

An order finally ratifying an auditor's account is conclusive
as to the matters in controversy and can be vacated or re-
vised only in the same manner as other decrees may be.

After the ratification of an auditor's account, distributing funds
received from the sale of property, a subsequent order, di-
recting an account to be stated of all the funds in the case,
does not rescind the first order of ratification.

When one of two trustees appointed to sell property author-
izes his co-trustee to receive the money paid by the pur-
chasers, confirms his acts in that respect and consents to
the ratification of an auditor's report distributing the sums
so paid, he is responsible for a misappropriation of the money
by his co-trustee and is estopped from asking to have the
audit revoked so as to throw the loss on the purchasers of
the property.

When one of two trustees authorizes his co-trustee to receive
money due to the estate, the persons making the payments
are under no obligation to see that the money is deposited
to the joint account of both trustees.

When a promissory note, payable to two trustees, is used by
one of them in payment of his individual debt, by his un-
authorized endorsement of the other trustee's name, the
person receiving the note is chargeable with the same to the
trust estate.

A purchaser of property from two trustees, gave to one of
them, in payment, a note of a third person payable to his
order and endorsed in blank. The trustee receiving the note

sold the same, in breach of trust, to a *bona fide* purchaser before maturity. *Held,* that the purchaser of the note acquired a valid title thereto.

Property was sold by two trustees under a decree which provided that the deferred payments should be secured by the notes of the purchasers with surety. A purchaser gave to one of the trustees, in payment of the purchase money, the notes of a third party to his order and endorsed by him in blank and not to the order of the two trustees. The trustee receiving the notes misappropriated the amount thereof. *Held,* that since the purchaser had enabled the trustee to commit a breach of trust by his own negligence, and had not been authorized by the other trustee to make payment in such a manner, he is still liable to the trust estate for the amount of the notes.

When one of two trustees endorses upon a note, payable to both, the name of his co-trustee without authority, and deposits the same in bank to his individual account and misappropriates the fund, the bank is a party to the breach of trust and is responsible for the loss, unless the claim of the trust estate therefor is barred by limitations.

When one trustee allows his co-trustee to retain possession of a note payable to them, the maker of the note is justified in paying the amount due at maturity to the trustee in possession, who surrenders the note to him, and is not responsible for the misappropriation of the proceeds by such trustee.

A distributee of an estate, who has assigned his claim against it to one of two trustees, has no right afterwards to demand payment from the other trustee.

Appeal from a *pro forma* decree of the Circuit Court for Queen Anne's County by which it was adjudged among other things:

"2d. That said H. H. Barroll, trustee, will bring into this Court for distribution so much of the purchase money for the purchases of Pere T. Forman as is represented by the notes of John B. Brown to his order and endorsed in blank by him, one for $1,167.15, endorsed

by A. Randolph Weedon, a former trustee in this cause, to The Workingmen's Permanent Building and Loan Association of Queen Anne's county, and one for $1,-230.50, endorsed by said Weedon to Robert J. Reynolds, and both otherwise fully described by the proceedings in this cause, and that the petition and bill in No. 1344, in this Court, so far as same seeks to charge said association and others therewith, is dismissed with costs.

"3d.   That said Hope H. Barroll, trustee, will bring into this Court for distribution, so much of the purchase money as is represented by the note of R. Hopper Smith, with Isaac Snitcher as surety, at 12 months from Sept. 29th, 1891, to order of A. R. Weedon and Hope H. Barroll, trustees, for $200.00, with interest from January 1st, 1892, being Exhibit Q No 25 in this cause, and a like note of said parties, of Sept. 25, 1891, at 24 months, for $200.00, with interest from January 1st, 1892, being notes for the 1st and 2d credit payments of said Smith in settling or closing for his said purchasers, and both payable at the Centreville National Bank of Maryland; and the bill filed in this Court by *Hope H. Barroll, Trustee* v. *The Centreville National Bank of Maryland and others*, in No. 1348, be, and the same is hereby, dismissed with costs.

"4th.   That said Hope H. Barroll, trustee, will bring into this Court for distribution, so much of the purchase money as is represented by the note of Nelson E. Smith with R. Hopper Smith as his surety, for $450.00, at 24 months from Sept. 29th, 1891, with interest from January 1st, 1892, being Exhibit N. E. S., No. 3, and for the 2d credit payment of the purchases of said Nelson E. Smith in this cause.

"5th.   That the money represented by the note of said Nelson E. Smith, with R. Hopper Smith as his surety, for $450.00, at 12 months from Sept. 29th, 1891, with interest from January 1st, 1892, and passed to Robert J. Reynolds, being for the 1st credit payment on the purchases of said Nelson E. Smith in this cause, is a proper credit on the allowance to said Reynolds on claim No. 1 in said audit, of $1,038.07, and said Hope

H. Barroll, trustee, is hereby allowed so to apply the same.

"6th. That the claim of payment of the dividend allowed to J. Addison Atwell, on his claim No. 13, in the audit aforesaid, be, and the same is hereby, disallowed, and that said Weedon is not entitled to any of said claim."

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, ROBERTS and BOYD, JJ.

*James P. Gorter*, for the appellant.

*Edwin H. Brown*, for the appellees.

BOYD, J., delivered the opinion of the Court.

A bill was filed in the Circuit Court for Queen Anne's county for the sale of the real estate of Joseph O. Rasin, for the purposes of partition and a decree was passed appointing A. Randolph Weedon and Hope H. Barroll, trustees. The record does not show the dates on which some of the papers were filed, but apparently sometime in October, 1891, the trustees filed a report showing they had offered the several properties for sale on September 29th, 1891, and had sold eight of them for $4,745. The proceedings were converted into a creditor's bill and the proceeds of sales directed to be paid to creditors, as far as necessary. A second report was filed, showing that additional sales had been made to the amount of $3,800, which together with the others were duly ratified. On the 31st day of May, 1893, the two trustees filed a statement, showing that they had collected from the purchasers the several amounts therein named, being in the aggregate the sum of $4,370, and asked to have the papers referred to the auditor. In September of that year an audit was filed distributing that sum. After allowing commissions, costs, taxes and $416.73 to Mrs. Rasin in lieu of dower, the balance was distributed to creditors, and on February 23rd, 1894, the audit was finally ratified.

In May, 1894, Barroll filed a petition setting forth that the whole of the $4,370 had been paid to Weedon, as stated in the previous report, and only $703.65 of it had been received by him (Barroll), which was the amount of a judgment of William Deering & Co., a creditor represented by him, and that, although he had requested Weedon to distribute the money as directed by the audit, he had not done so, and alleged that he was informed that a large sum in addition to the $4,370 had been paid to Weedon by the purchasers, which he had not accounted for. After some other proceedings, an order was passed requiring Weedon to bring into Court all the moneys received by him from the sales or proper and legal vouchers showing the disbursements thereof, and the bonds, notes and evidences of debt arising from the sales which had not been collected, in answer to which he only returned three notes, amounting to $1,100. Barroll finally asked to have Weedon removed and Weedon filed his resignation, which the Court accepted and ordered him to deliver to Barroll all bonds, notes or evidences of debt held by him, and to pay him all moneys received by him, excepting such as had been properly paid out under the audit. On October 12, 1895, Barroll filed another petition, in which he recited at length the previous transactions and proceedings in the case, alleged that it was impossible to proceed further without having the rights of all parties interested determined, and made the heirs of Mr. Rasin, the purchasers and creditors parties. On March 11, 1896, he amended that petition by adding a prayer to revoke and set aside the order of ratification of the auditor's account. Most of the respondents answered the petition. A separate bill in equity was also filed on January 27, 1896, by Barroll, against the heirs and others, in which he asked to have the ratification of the audit set aside on account of the fraud of Weedon. He also proceeded in equity against Pere T. Forman, and The Workingmen's Permanent Building and Loan Association, to recover the amount of a note which Forman had given to Weedon as part of his purchase money,

and which the Building Association had discounted, and brought another case against the Centreville National Bank and others, to compel payment of three notes of R. Hopper Smith and Isaac Snitcher, which it was alleged the bank had collected. There are altogether six equity cases connected with these transactions which the solicitors for the respective parties agreed should be heard together, which was done, but a re-argument having been ordered a *pro forma* decree was agreed to, which was passed, and an appeal was taken by Barroll. It is doubtful whether so many cases should be thus heard together and disposed of in one opinion—especially when the record is as imperfect as this is, but as the administration of the trust has already been shamefully delayed—owing principally to the evasions and misappropriations of Weedon—we will pass upon such questions as are properly before us.

It seems to be conceded that Weedon and his bond furnish no protection to the parties interested, although he collected most of the purchase money that has been paid, and has misappropriated a considerable amount of it. Barroll being financially responsible, the main questions presented by this appeal are how far he is to be held liable for the defaults of his co-trustee, and what relief he has against the several parties sought to be charged by the various proceedings brought before us. His contention is that the purchase money was paid to Weedon without his authority, and that therefore he is not responsible for the misappropriations by him, and that in some instances purchasers so dealt with Weedon and so settled with him, contrary to the terms of the decree, as to enable him to misappropriate the funds without his (Barroll's) knowledge, and therefore the payment to Weedon did not release them. Then again it is contended that other parties dealt with the assets of the estate in the hands of Weedon under such circumstances as to be notice to them that they belonged to the trust estate, and are hence responsible. It will be more convenient and perhaps less confusing to discuss the several items in the order they were disposed of by

the *pro forma* decree, and we will therefore adopt, as far as practicable, that plan, although to some extent what is said of some will apply to others.

1. The application of Barroll to have the order ratifying the audit vacated was refused and he was directed to proceed with the execution of it. The audit was filed at Barroll's instance, after his examination of it, was ratified on the 23rd day of February, 1894, and no formal application to have it rescinded was made until January 27th, 1896. An order finally ratifying the audit can only be vacated or revised as other decrees can. "It is conclusive as to the matters in controversy to which it relates and has the effect of a final decree. The account is *res adjudicata,* all parties are concluded and the litigation is terminated." *Miller's Equity Procedure,* section 552 and cases there cited. There was no such surprise, fraud or mistake as would entitle a party to be relieved from a decree that had been thus passed and enrolled, even if the application had been promptly made. The only surprise or mistake that has been suggested was that the appellant believed the money was in bank. That would not entitle him to relief, but the audit laid in Court nearly six months before it was ratified, and he had every opportunity to acquaint himself with the facts. In October, 1892, when Weedon sent him a check for balance on the Deering claim it was drawn on his individual account. It is true that Barroll says he did not notice that fact, but as between him and innocent parties he was compelled to notice such transactions, if he proposed to hold them responsible.

Then, too, he knew the exact amounts that were included in the audit, and the purchasers who had made the payments.

The testimony is not as clear as it might have been, but it is sufficient to show that Barroll permitted Weedon to settle with the purchasers for the cash payments due from sales embraced in the first report. He left Centreville, where the sales had taken place, before the settlements were made. He said on cross-examination, " I returned home that evening, it was understood that

Mr. Weedon would arrange the settlements, but only in accordance with the advertised terms of sale." By the terms of the sale, one-fourth was to be paid in cash and he must certainly have contemplated and understood that at least to that extent the purchasers would settle with Weedon, and as between Barroll and them there could therefore be no question about his being bound by such payments. They were under no obligations to see that the money was deposited to the joint account of the two trustees. In the $4,370 distributed in the audit were the payments made by three of the purchasers which were ratified by the execution of deeds, $2,000 of those made by Forman which were authorized to the extent of the cash payment due and the Deering claim, and the cash payments of the two Smiths, together with a small amount, which Barroll will get the benefit of against Robert J. Reynolds, and it would be very unjust to hold the purchasers responsible for those amounts. In all probability neither Barroll nor they had, at the time, any cause to suspect Weedon of dishonesty, but inasmuch as Barroll had authorized him to settle in accordance with the terms of sale he was expressly authorized to receive the cash payments. But as we have already intimated, even if that were not so, he subsequently ratified these payments by his conduct before and after the audit was stated. That ratification was with full knowledge of the material fact that the money had been paid to Weedon and he cannot be relieved merely because he believed that the fund was in bank to their joint credit or would be forthcoming when needed. Every principle of justice and equity should estop him from casting the burden of the loss on innocent parties after thus ratifying the acts of his co-trustee—especially when most of the payments had been previously authorized by him.

Nor can we agree with the appellant that the order of the Court of August 10th, 1894, which amongst other things provided " that the papers and proceedings in the case be referred to the auditor to state one or more accounts of all the funds in the case, or such as shall by

said co-trustees be deemed solvent and collectible," had the effect of rescinding the order ratifying the audit.    In the first place the Court at that time had no power to rescind it to the detriment of those interested in it, on the *ex parte* application of one of the trustees.    But at that time Barroll had not even applied to have it rescinded.    The object of that order evidently was to have a statement between Barroll and Weedon and not between them and the distributees.    That part of the *pro forma* decree must be affirmed and the appellant will be required to pay to the persons distributed to in accordance with the audit, unless otherwise herein directed, excepting of course such sums as have been already paid or discharged by the parties.

The decree provides that the amount received by Robert J. Reynolds on the Nelson E. Smith note is to be deducted from the distribution to him.    He did not appeal and under the evidence is undoubtedly chargeable with that amount, as the note was payable to the two trustees and Weedon had no power to use it for the payment of his individual debt or to endorse Barroll's name on it.

Of course Barroll is entitled to the distribution allowed the Deering & Co. claim, and the difference between that distribution and the amount received by him in payment of that judgment can be allowed in the next audit.

2. The decree further requires Barroll to bring into Court so much of the purchase money of Forman as was represented by two notes of John B. Brown, payable to the order of Forman, endorsed in blank by him, and turned over by him to Weedon as part payment of his purchase money.    One of them was for $1,167.15, payable twenty-four months after September 29, 1891, and the other for $1,230.50, payable thirty-six months after date, being intended to cover the two last deferred payments of his purchase money.    The first was discounted by the Workingmen's Permanent Building and Loan Association, and the second was turned over by Weedon to Robert J. Reynolds in payment of some

individual debt. By this paragraph it is also decreed " that the petition and bill in No. 1344 in this Court, so far as the same seeks to charge said association and others therewith, is dismissed with costs." No. 1344 is a case of Barroll, trustee, against Forman, The Building Association " et al." The record does not disclose who the others are, but the brief statement of the case shows that the bill was filed to recover the note negotiated by Weedon with the Building Association, and was purchased by the association before maturity— October 25, 1892. There is no evidence to show that the Building Association had any knowledge that it belonged to this or any trust estate. It is true that Mr. Brown was president of the association, but he was not present when the note was purchased and was not aware what use Forman was going to make of it or, until long afterwards, what had been done with it. He gave the notes to Forman in settlement of a debt due to him. To hold a *bona fide* purchaser of a negotiable note responsible under such circumstances would be an effectual barrier to the safe conduct of ordinary *bona fide* commercial transactions. So much of the decree as holds the Building Association free from liability must therefore be affirmed.

Nor is there anything in the record to show that Reynolds had notice that the Brown note he received belonged to the trust estate, and we so held in case of *Barroll* v. *Forman* decided at last October term of this Court. But the important question to be determined concerning those notes is whether Forman is still responsible to Barroll, the remaining trustee, for such portion of the purchase money as was represented by them. After a very careful and critical examination of the evidence we have failed to find any authority from Barroll to Forman to settle as he did with Weedon or any legal justification for him to pursue the course he adopted. He attempts to justify it from the fact that on the day of the first sale (September 29, 1891) Barroll told him that any settlement he made with Weedon would be satisfactory to him. He admitted on cross-

examination that he did not tell Barroll that he pro-
posed to use the Brown notes—in fact they were not
even in existence at that time.   He testified that they
were received by him about September 29, 1892, and
antedated one year at his request, and. a statement of
the account between him and Weedon and Barroll,
trustees, which is signed " settled as above.   Says A. R.
Weedon, Atty., trustee," was also made at the same
time.   He did not complete the cash payment until
February 27, 1892, and settled the first credit payment
the last of September, 1892, by the payment of the
Deering claim to Barroll, and his note payable to the
order of Weedon for $409.37, due two months after July
29, 1892.   The draft he had accepted for the Deering
claim on July 11, 1892, was signed by both trustees,
and stated on its face, " when paid will be a credit on
the purchase money you owe A. R. Weedon and Hope
H. Barroll, Trustees."   His letter to Barroll, enclosing
a check for that claim, reads, " Inclosed find ck. to
pay order held by you from A. R. Weedon and yourself,
as co-trustees, for sale of Rasin real estate."   Ordinary
prudence in business dealings should have suggested to
him the propriety of mentioning in that letter the fact
that he had settled and how he had settled with Weedon,
the day before he wrote the letter—especially as he knew
that the form of those notes was not in accordance with
the terms advertised, which provided for the deferred
payments being secured by the bonds or notes of the
*purchasers*, with sureties approved by the trustees.
From the testimony he is apparently an intelligent busi-
ness man and he ought to have known that he could
not safely thus deal with one of two trustees without
liability to the other or the trust estate.   If these notes
were taken in payment of the balance due by him, it is
singular that he did not at once demand, or at least ask
for, a deed, but that does not appear to have been done.
There is nothing in the record from which we can reach
the conclusion that anything Barroll did or said could
have justified Forman in thus settling with Weedon.
It would be difficult to imagine the adoption of readier

means of enabling a trustee to misappropriate the funds of a trust than was thus done. They are not only not the notes of a purchaser, but were endorsed in blank instead of to the two trustees, which should have been done if Forman supposed he was settling in accordance with Barroll's alleged authority to settle with Weedon. By thus endorsing them he enabled Weedon, unintentionally it may be, to do just what was done—transfer them without any notice to third persons that they belonged to the trust estate, and made it easy for him to commit a breach of trust, thus materially aiding him in the accomplishment of his purpose. As was said in *Duckett* v. *Bank*, 86 Md. 400, he "took the first step that ended in the spoliation of the trust." We do not deem it necessary to enter into a discussion of the numerous cases cited in the briefs, as this opinion, by reason of the consolidation of so many cases in one, will be longer than we would desire, and there is no difficulty about the law that is applicable to the facts. One trustee may so commit the execution of the trust to his co-trustee, or so ratify his acts as to make him responsible to third parties for the defalcation of the latter, but a person dealing with one of two trustees has no right to hide behind his own negligence and indifference to results, and cast the burden on the other trustee under such circumstances as we have detailed. When there are two trustees, one of whom lives where the property and purchasers are, and the other lives elsewhere, the former will naturally take a more active part than the other, but when purchasers are dealing with one, they should at least use reasonable precautions to prevent imposing unnecessary risks on the other or loss on the estate—especially not to act in defiance of the terms of the sale under which they purchased, and of what the plainest business principles would suggest. It is very much to be regretted that any one must lose in such cases, but the wider the bars are thrown open the more frequent will there be such occurrences.

The solicitor for the appellees very earnestly and forcibly contended that Barroll should be held liable

by reason of his practically surrendering the execution of the trust to Weedon, but so far as that was done to any extent, he by our conclusion as to the audit is made responsible, and most of the money then due, under the terms of sale, by Forman, was included in the statement by the trustees of the fund to be distributed in the audit, and Barroll had no reason to suspect that Forman had put it in the power of Weedon to use for his own purposes the evidences of payments not yet due.   As soon as he ascertained the facts, which was months before the last payment of Forman was due, he reported them to the Court and took steps to protect the estate.   But as to these payments, Forman had already put it beyond Barroll's power to save them, unless he (Forman) is to be held responsible.   It is not necessary to discuss the question as to what Barroll would have done if the notes had been in regular form.   Possibly he might have so acted as to estop him from proceeding against Forman, but we are dealing with what was done and not what might have occurred.   There could be no doubt about the fact, however, that if Forman had given notes payable to the two trustees, at least one of them would have been protected, as Weedon's conduct was discovered before that payment was due, and both would have been so ear-marked as to put third persons on their guard.

This paragraph of the decree (the second) will be affirmed in so far as it discharges the Building Association but Forman must be charged with the two deferred payments represented by those notes, and so far as he is relieved of that by the decree, it must be reversed. The memorandum in the record of the case against him and others states that all the defendants rely on limitations as a bar, but the two payments were not due until September 29th, 1893, and September 29th, 1894, respectively, and the bill appears to have been filed September 17, 1896, within three years from their maturity. Whether or not he could have the benefit of the statute, assuming him to have been a participant in the breach of trust by his conduct, even if three years had elapsed,

is not necessary to be determined. But as he has not paid the purchase money in an authorized way, and hence has not complied with the terms of sale, he could be compelled to do so by the Court under section 194 of Art. 16, if there be any difficulty about doing so in the equity case.

We do not refer to the portion of the note for $409.27, given to Weedon, which is not included in the $2,000 embraced in the audit, as the decree below does not.

3. The liability of the Centreville National Bank for the money realized on the note of R. Hopper Smith with Isaac Snitcher as surety, payable twelve months after September 29, 1891, is well established by the authorities, unless relieved by limitations. It was payable to the order of A. R. Weedon and Hope H. Barroll, trustees, was endorsed in the names of both by Weedon, discounted by the bank and the proceeds deposited to his individual account. The cashier testified that all the money to Weedon's credit had been drawn out by him from time to time. It is not pretended that Barroll either endorsed the note or authorized Weedon to do so. Nor is there any evidence that the proceeds of it were applied for the benefit of the trust. Under such circumstances the bank is a party to the breach of trust. *Duckett* v. *Bank, supra,* and is responsible for the loss, unless the claim is barred by the statute of limitations. As to the other note of the same parties, payable twenty-four months after date, the evidence is very meagre and unsatisfactory. The note itself is not produced and it is impossible to reach a proper conclusion in reference to it from what we have before us. We have therefore determined to remand this part of the decree (paragraph third) without affirming or reversing it, under the provisions of section 36 of Art. 5 of the Code. In the cause to which the bank is a party, further testimony can be taken and its liability as to both notes, and the question whether under the circumstances the statute of limitations applies, can then be determined.

4. The Nelson E. Smith note for $450, payable twenty-four months after September 29, 1891, was re-

ported by the two trustees as in their hands on November 19th, 1891. Barroll permitted it to remain in Weedon's hands and knew that it was payable in September, 1893. There is no evidence as to how it was paid or by whom. If Smith found it in Weedon's possession at maturity and Weedon received the amount and surrendered the note to him, in a contest between Smith and Barroll, the latter should sustain the loss. There was not only nothing to suggest any proposed misappropriation by Weedon of the proceeds, but under the circumstances proved in this case, we think Smith had the right to assume that Weedon held the note, as in fact he did, with Barroll's authority and that on receipt of the purchase money at maturity he was authorized to surrender it. Smith had done all that was required of him, had given the notes payable to the order of the two and had done nothing to facilitate a breach of trust. That paragraph of the decree will be affirmed.

5. The portion of the decree that disallows the claim of payment of distribution to J. A. Atwell will be reversed without prejudice to his further proceeding to endeavor to recover the amount audited to him. As that stands in the record we do not think Barroll should be precluded from questioning Atwell's right to the amount audited to him, for if the testimony of Weedon is correct, Atwell had assigned the claim to him, had taken his note with security as payment upon which he has obtained judgment. The petition of Barroll alleged that Weedon claimed that he had paid Atwell, and Atwell in his answer does not deny it, but he and other respondents answering with him neither admit nor deny the allegations in the petition, but aver that the petitioner should be required to bring into Court the sums *appearing* to be due to each of them. It may be that the transaction between Weedon and Atwell amounted to payment. If so it would be unjust to compel Barroll to pay it. If Weedon's statement is correct it is probable that Barroll has suffered by that act of Atwell, as Weedon might have paid him in cash but for the arrangement entered into by Atwell. If he has not been

paid, or done some act which precludes him from holding Barroll, he can establish that fact in a proper way without requiring the Court to assume it. We think there is enough in the record to require that of him and hence the decree ought not to deprive Barroll of the right to contest Atwell's claim to the distribution, if he sees proper to do so.

We have thus disposed of all questions presented by the *pro forma* decree, excepting that raised by the 7th clause in reference to the amount distributed to Mrs. Rasin, which will be passed upon in the case of *Owens* v. *Barroll, Trustee*.

It may not be out of place to add that in reaching the conclusions we have, we have kept in mind the fact that Barroll was entirely innocent of any wrong-doing and that all the funds in controversy were received by his co-trustee and not by him. Where we have held that he is responsible, we believe that he had either given the co-trustee authority, or with knowledge of the material facts had subsequently ratified his acts, or had so dealt with the purchasers as to lead them to believe that they had the right to do what they did.. On the other hand, where purchasers and others have, without Barroll's authority and contrary to the terms of sale, so dealt with his co-trustee as to tempt or facilitate his misappropriations, they and not Barroll should suffer the loss.

*Pro forma decree affirmed in part and reversed in part, and cause remanded for further proceedings, so far as herein directed or authorized. One-half of the costs in this Court, including cost of transcribing the record, to be paid out of the trust estate; one-fourth by Forman and one-fourth by Barroll individually. Costs in the several cases in the Court below to be determined by that Court on or after entering decrees in accordance with this opinion.*

(Decided June 29, 1898.)