# FIRST DENTON NATIONAL BANK *vs.* ARTHUR J. KENNEY.

*Bank checks; order of payee; negotiable instruments; endorsements in blank; right of bank to apply funds to debt of depositor; checks to payee "attorney"; memoranda on checks.   Banks: notice to director.*

A bank check drawn to the order of the payee is a negotiable instrument under Article 13, sections 20 and 22 of the Code of Public General Laws (1904).                             p. 29

When a check is endorsed in blank by the payee and is credited by the bank to the depositor's account, the title to the check passes to the bank.                             p. 29

When a depositor is indebted to a bank the latter may apply his deposits, or such portion thereof as may be necessary, to the payment of his indebtedness, unless there is an agreement to the contrary, or unless the deposit is specially applicable to some other purpose, or the bank has notice that the funds do not belong to the customer.                pp. 30-31

The right of the bank so to retain the fund is not affected by the failure of the depositor to assent to its application to the payment of his debt to the bank.                    p. 31

A check drawn to the order of the payee "attorney" does not necessarily impress the check with any trust.                    p. 34

Memoranda on a check, descriptive of what the funds were, or the source from whence they came, is not notice to the bank that the funds are impressed with any trust.    p. 34

Where the payee of a check to his order as "attorney" is indorsed by him and deposited in his individual account, the bank has the right to credit it up, or to charge it against his indebtedness to the bank.                    pp. 34-35

Knowledge acquired by a director of a bank, in his individual capacity, and not communicated by him to any officer or official of the bank, is not notice to the bank.    p. 34

*Decided June 22nd, 1911.*

Appeal from the Circuit Court of Caroline County (HOPPER, J.).

The case was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, URNER and STOCKBRIDRE, JJ.

*Joseph C. France* and *Henry L. Lewis* (with whom was *T. Pliny Fisher,* on the brief), for the appellant.

*T. Allan Goldsborough,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellee on this record held a mortgage upon the property of Joseph E. Hammel and wife amounting with interest to the sum of $1,150.76. By the directions of the appellee this sum, in payment of the mortgage, was paid by a check of Oscar Clark drawn on the Denton National

Bank to the order of William H. Deweese, the attorney of the appellee. This check is in these words:

"DENTON, MD., October 4, 1906.

Pay to the order of Wm. H. Deweese, Atty., $1,150.76, Eleven Hundred and fifty and 76/100, in full for A. J. Kenney mortgage.

To Denton National Bank, Denton, Maryland.

OSCAR CLARK."

At that time Mr. Deweese was sick, and he died in February, 1907, insolvent. On the 8th of October, 1906, being too helpless to write his name, the check was endorsed as follows and sent to the bank for deposit:

"WM. H. DEWEESE, Atty. (His Mark)

Test: MAY GOOTEE."

The bank returned the check to Mr. Deweese, and informed him that it would not deposit the same to his credit under this endorsement. The check was then endorsed in these words and returned to the bank, and the proceeds were credited to his individual account:

"WM. H. DEWEESE. (His Mark)

Test: MAY GOOTEE."

On the day the check was deposited, William H. Deweese was indebted to the bank, on overdraft, in the sum of $32.18. On November 26th, 1906, an overdue promissory note for the sum of $800.00, payable to the Denton National Bank and signed by William H. Deweese and Harvey L. Cooper, as joint makers, was by direction of Harvey L. Cooper, a co-maker of the note and who was also the president of the Denton National Bank, charged to the amount of Mr. Deweese. The whole amount standing to the credit of Mr. Deweese on the books of the bank at that time, and against which the note was charged was then represented by the proceeds of the check of Oscar Clark mentioned above. The bank also charged against the account the overdue draft of $32.18.

Frederick R. Owens was appointed and qualified as administrator of the personal estate of William H. Deweese, and the bank paid over to him as administrator the sum of $80.19, the amount remaining to the credit of Deweese upon its books at the time of his death.

This suit was brought by the appellee against Harvey L. Cooper, Frederick R. Owens, administrator of William H. Deweese, and the Denton National Bank to recover the money which the bank charged under the circumstances mentioned to the account of Deweese.

The seventh paragraph of the bill charges that "in addition to the information furnished the officers and directors of the said Denton National Bank and to the said Harvey L. Cooper, by the wording of the check aforesaid, the said officers and directors of the said The Denton National Bank and the said Harvey L. Cooper surety on the said note and president of the Denton National Bank, had actual knowledge of the fiduciary relation which the said William H. Deweese bore to the entire account to which this said note was charged up."

The prayers of the bill are first, for a decree declaring the Denton National Bank to be indebted to the plaintiff in the sum of $806.67, the amount of said note charged up to said account, with interest from November 26th, 1906, until paid. Second, that a decree be passed directing Frederick R. Owens, administrator of the said William H. Deweese, to pay to the plaintiff the sum of $80.09, the portion of the above account paid to him by the bank, and for further relief.

The bank, in its answer to the bill of complaint, admitted that it received for deposit from William H. Deweese on the 8th day of October, 1906, a properly endorsed check of Oscar Clark for $1,150.76, and averred that it had received this check in the usual course of business, and that at the time of the deposit of that check the account of Deweese was overdrawn to the extent of $32.18. It admitted the execution of the note by Deweese and Cooper for the sum of $800.00,

as stated in the bill, and that the note with interest was charged as alleged to the account of William H. Deweese. It denied that it had any knowledge or information at the time the check was deposited that Deweese was insolvent, or that it had any knowledge of any fiduciary relation existing between Deweese and the appellee, or any other person so far as this deposit or account was concerned; but that it believed and treated the account as it actually was, the individual account of William H. Deweese. It admitted that it charged to his account the $32.18 referred to, and that it paid to Frederick R. Owens, the administrator, of William H. Deweese, the sum of $80.09, the balance remaining to the account of the deceased.

The answer further avers that so far as the bank "had any knowledge or had any reason to believe, at the time of the charging of the said note and overdraft, the money standing to the credit of the said William H. Deweese was his private account, subject to his check, and liable for any overdue indebtedness to said defendant, and the charging up of said note and said shortage was done in good faith, and in the regular course of business, with the consent of said William Deweese and ratified by him."

The material averments of the answer of Harvey L. Cooper appear in the fifth and seventh paragraphs, wherein it is denied that the note was charged to the account of William H. Deweese by his direction either as surety or as president of the Denton National Bank, and he avers that he had no knowledge that the note charged against the account of said Deweese until sometime subsequent to the time when that was done, and he further denies that he had any knowledge of any fiduciary relation existing between Deweese and the plaintiff.

The answer of Frederick R. Owens, the administrator, need not be particularly examined. It admits the receipt from the bank of the sum of $80.09, and states that this amount is deposited to his credit as administrator in the

defendant bank. The general replication was filed, and the testimony was taken in open Court.

The case was heard upon the bill, answers and testimony. The Court dismissed the bill as to Harvey L. Cooper; but as to the Denton National Bank and Frederick R. Owens, the administrator, it ordered and decreed, first, "that the defendant, the Denton National Bank, pay to the plaintiff the sum of eight hundred and six dollars and sixty-seven cents ($806.67), the amount of the note in controversy in this suit charged up to said account, and also that the said Denton National Bank pay to the plaintiff the sum of thirty-two and eighteen cents ($32.18), the amount of the overdraft mentioned in said cause charged to the said account, represented by the check of eleven hundred and fifty dollars and seventy-six cents ($1,150.76), mentioned in this cause;" secondly, "that Frederick R. Owens, the administrator of the personal estate of William H. Deweese, deceased, pay to the plaintiff eighty dollars and nine cents ($80.09), the amount of the plaintiff's money, as represented by the aforesaid check of eleven hundred and fifty dollars and seventy-six cents, paid over to the said Frederick R. Owens, administrator, by the defendant, the Denton National Bank." The bank was ordered to pay the costs of the proceeding. The appeal before us is taken from this decree by the bank alone.

William H. Deweese had been a depositor of the bank prior to the date of the check in question. This check was a negotiable instrument under Article 13, sections 20 and 22 of the Code of 1904. It was drawn on the Denton National Bank, and was made payable to William H. Deweese, attorney. It was endorsed by him in blank, and the amount of the check credited to his individual account. This credit was given upon the faith of the check, the title to which passed to the bank under the endorsements.

It is said in *Tyson & Rawls* v. *The Western National Bank,* 77 Md. 415, that "it is well settled that when a customer of a bank deposits money to the credit of his account, the money becomes the property of the bank. The customer

is credited and the bank is debtor, with all the ordinary incidents belonging to that legal relation. There is no fiduciary connection between them. The depositor departs with his money, and the bank contracts an obligation to pay such checks as he may draw to an amount not exceeding the sum deposited. The consideration which the depositor receives for his money is the absolute and unconditional contract by the bank to pay his checks to the extent of his deposits. And the same rule obtains in the case of checks, drafts and promissory notes, wherever, under the circumstances of the case, it is applicable; that is to say, wherever the bank becomes the owner of the commercial paper, and the customer acquires the unconditional right to draw for the proceeds. When a check, draft or promissory note is endorsed in blank, or to the order of the bank, and the proceeds credited to the depositor as cash, the bank becomes the owner of the paper by virtue of the endorsement. And, in case it is not paid at maturity, it has the ordinary remedies which belong to the endorsee of instruments of this character which have been dishonored."

If this were a suit between the appellee and William H. Deweese, or his administrator, there could be no difficulty as to the right of the plaintiff to recover the proceeds of the check; but quite a different question is here presented. Assuming that the check in the hands of Deweese was impressed with a trust in favor of the appellee, as he contends, it would seem clear upon the settled law of this State, which is in accord with the weight of authority in other jurisdictions, that there could be no recovery in this case, unless it is shown that the bank is chargeable with notice of the trust. Unless it had this knowledge, the bank acted entirely within its rights in charging up against the account of Deweese his indebtedness to it. The general rule is well settled that when a depositor is indebted to a bank, the bank may apply his deposits, or such portion thereof as may be necessary, to the payment of his indebtedness; unless there be an agreement to the contrary, or unless the

deposit be specially applicable to some other particular purpose, or unless the bank has notice that the funds do not belong to the customer. This right to apply the deposit to the customer's indebtedness is called the banker's lien, or right of set-off, and does not depend upon the customer's assent. Instances of its application are most frequently found in the case of antecedent debts. We have found no case holding that the consent of the customer was a prerequisite of the bank's right to assert its lien, although the circumstance that the customer had consented is mentioned in some of the cases.

In *Maitland* v. *Citizens' National Bank,* 40 Md. 540, JUDGE ALVEY referred to *Miller* v. *Farmers' Bank,* 30 Md. 392, and said that that "was the ordinary case of a bank asserting its lien upon securities in its hands for the payment of balances due from its customers. According to the law of the land the bank, a kind of factor in pecuniary transactions, was entitled to a lien upon all securities for money of customers in its hands for its advances to such customers in the ordinary course of business, without reference to the true ownership of such securities, if the bank was without knowledge upon the subject." It is equally well settled that where a negotiable instrument, payable to order, is endorsed by the payee in blank that such endorsement imports property in the holder, and that a person without notice to the contrary, who receives it from such holder, has a right to treat him as the *bona fide* owner, and is not bound to make inquiry whether he holds it as agent or otherwise. *Miller* v. *The Farmers' Bank, supra.*

That case throws much light upon the question presented by this appeal. Certain negotiable promissory notes, the property of Daniel Miller & Company, were endorsed by that firm and delivered to Lee & Company, bankers and brokers in Baltimore, for collection. The endorsements were absolute and unqualified. Lee & Company, who were indebted to the bank, growing out of a long course of dealing, sent these notes to the bank *specially endorsed for collec-*

*tion.* Under this form of endorsement the bank took no title to the notes.  The notes were paid and placed to the credit of Lee & Company in an account current, which had been running between the bank and that company for several years.  At the time the notes were paid and credited to Lee & Company the bank had no knowledge that that company did not own the notes, and did not become aware of that fact until after the failure of the company, when it was notified that the notes belonged to Miller & Company.  At the time of the failure Lee & Company owed the bank on antecedent debts considerably more than the proceeds of the notes.  The bank was sued by Miller & Company to recover the proceeds of the notes, and, not claiming title under the form of the endorsement to be a *bona fide* holder for value without notice, as, of course, it could not do, asserted its right to retain the money received on the notes and apply it to the indebtedness of Lee & Company.  In passing upon this claim JUDGE ALVEY said: "But it is contended, on the part of the defendant, that by the course of dealings between Lee & Company and the defendant, the latter has the right to retain the proceeds of the note in its hands to be applied in part entinguishment of the general balance still remaining due on account of Lee & Company.  And whether the defendant has the right so to retain the money received on the notes depends upon a question of fact, and that it was credit really given to Lee & Company on the faith of these notes, endorsed to the defendant, before the receipt of knowledge that they belonged to the plaintiff.  If such credit was in fact given, it can make no manner of difference whether it was in the form of advances of money, or balances on account of mutual dealings between the parties, suffered to remain undrawn for.  In case the credit was extended in either form, the right of the defendant is clear, and the plaintiff must pay it."

We have, therefore, no difficulty in holding that the right of the bank to retain the funds is not affected by the failure of the depositor to assent to its application to the payment of

his debt to the bank, or by the fact that the debt was an antecedent one. Nor do we think that the well recognized doctrine of tracing trust funds announced in *Swift* v. *Williams,* 68 Md. 236, controls the case; unless it appear that the bank had knowledge of the ownership of the funds. In that case the question of the banker's lien was not involved, and the bank was held liable upon the ground of participation in a breach of trust by I. Parker Veasey.

In this case the title to the check passed to the bank; a credit for the proceeds was extended by the bank to William H. Deweese upon the faith of a check; he was indebted to the bank in the sum stated in its answer at the time it applied the amount standing to his credit to that indebtedness. Upon the facts contained in the record the ultimate and sole question is whether the bank at the time it took the check and placed the proceeds to the individual account of Deweese had notice of the true ownership of the check, or that it was impressed with a trust. This is a question of fact, which must be determined by the evidence. After an examination of the testimony contained in the record we fully concur in the conclusions reached by JUDGE HOPPER on this question in the carefully prepared opinion filed by him in the lower Court. "The fund," he said, "is not now on deposit, having been applied by the bank to debts due it, as to the larger part, and the residue paid over to the administrator. In this aspect of the case, the first question that arises is, "Did the bank, at any time before applying the funds to pay the depositor's debts to it, have notice of the trust character of the fund?"

We do not find anything in the testimony that satisfies us that it had. It was sought to bring home to the bank this knowledge through Mr. C. W. Hobbs, vice-president and a director of the bank. He testified that he saw the check when it was presented at the bank by Miss Gootee and knew what it had been given for, but he said he did not know whether it was paid at the counter or deposited. He did not communicate his knowledge to Mr. Downes, receiving teller, nor

34   1ST DENTON NAT'L. BANK vs. KENNEY.

Opinion of the Court.                [116

to the directors of the bank, although he might have sug-
gested to the president of the bank, at a later date at board
meeting, that the overdue note of Deweese be charged up.
The president and other directors deny that such suggestion
was made. And so we think this effort failed. Nor do we
think the check itself gave notice of the trust character of
this fund. The abbreviation, "Atty.," written in the check,
after the payee's name, does not necessarily import a trust.
"Attorney" may mean assignee, agent or attorney at law,
and, when it is not coupled with other words of significance,
we think the usual and proper meaning given to it is attorney
at law. *Eichelberger* v. *Sifford*, 27 Md. 320; *Cyc.* 4, 897.
In our opinion the marginal memoranda on the check, "in
full of A. J. Kenney mortgage" does not broaden the meaning
of the abbreviation, Atty. It has been held that a bank is
not bound to notice "marks" or "memoranda" on checks. In
a case of *Duckett* v. *Mechanic's Bank*, 86 Md. 406, the Court,
discussing a check reading "Pay to the order of James Scott,
Cashier, $2,000, two thousand dollars, for deposit to credit
of Henry W. Claggett, being the balance of purchase money
due him as trustee from John R. Coale," said, "the memo-
randa descriptive of what the funds were or the source from
whence they came" was not "a notification to the Mechanic's
Bank that the fund was impressed with a trust that would
be invaded by their being carried to Claggett's individual
credit."

If Mr. Hobbs had any knowledge or information as to why
and for what purpose the check had been given by Mr. Clark
to Deweese, it was knowledge acquired in his private capac-
ity, and not while acting for or on behalf of the bank, and
which he never communicated to any officer or official of the
bank, and, therefore, any knowledge which he may have thus
acquired was not notice to the bank. *Md. Trust Company* v.
*Mechanic's Bank*, 102 Md. 629; *Zane on Banks and Bank-
ing*, 173.

Our conclusion is that the appellant had a right to apply
the deposit to the extinguishment of the debt due it by Mr.

Deweese, as it did do, and therefore, the decree of the lower Court must be reversed.

If loss must be sustained by the appellee, it is apparent that it will result from the way in which he permitted Mr. Deweese to handle the negotiable paper of which he was the true owner; but it is not equitable that this loss should be borne by the bank which has been guilty of no fault in the matter.

> *Decree reversed, with costs as to the Denton National Bank.*