WILLIAM L. ALL, ADMINISTRATOR AND TRUSTEE, *v.*
J. ROSS McCOMAS.

WILLIAM L. ALL, ADMINISTRATOR AND TRUSTEE, *v.*
HERMAN KLOPPEL.
[Nos. 38, 39, April Term, 1932.]

*Decided June 21st, 1932.*

The causes were argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*William L. All* and *Harry C. Lamberton,* with whom were *All, Henderson & Freeman* on the brief, for the appellant in each case.

*Raphael Walter,* with whom were *Sykes, Nyberg, Goldman & Walter* on the brief, for J. Ross McComas, appellee.

*Geo. Washington Williams,* with whom was *Isaac T. Parks, Jr.,* on the brief, for Herman Kloppel, appellee.

Sloan, J., delivered the opinion of the Court.

By her last will and testament, duly probated, Sarah A. Stembler appointed Christopher R. Wattenscheidt executor and trustee, and excused him from giving bond. Code, art. 93, sec. 42; *Neighbors v. Beck,* 162 Md. 362, 159 A. 748. It was also provided that, in case of any sales made by the said executor or trustee in the exercise of any powers conferred on him, the purchasers would not be required to see to the application of the purchase money.

After the misappropriation by Wattenscheidt of funds belonging to the estate, the appellant, William L. All, was appointed administrator *c. t. a.* and substituted trustee, and in such capacities filed a bill of complaint against the appellee J. Ross McComas, wherein it was alleged that Wattenscheidt, as executor, had, on January 6th, 1928, sold a drug business of the decedent in Baltimore to the appellee for $5,250, on account of which he gave in payment his check for $2,500, payable to the order of "Christopher R. Wattenscheidt, attorney, although the defendant well knew that he was purchasing property belonging to an estate from the executor thereof. The check so given was endorsed by Wattenscheidt as attorney and deposited to his individual account." On February 3rd, 1928, the purchaser gave his check on account of the purchase money, "payable to C. R. Wattenscheidt, executor," for $2,400, and on March 3rd, 1928, he paid the balance, $350, by a check "payable to the order of Christopher R. Wattenscheidt individually." The

checks were deposited by Wattenscheidt to his personal account, and the proceeds converted to his own use. The appellant prayed a personal decree against the appellee for the amount of the checks for $2,500 and $350, with interest, because of his failure to make them payable to Wattenscheidt as executor, the capacity in which the sale was made; the ground for the demand being, as alleged in the bill, "that the legal effect of the issuance of said checks, in the form above mentioned, was to render the defendant a party to the breach of trust by said Wattenscheidt and to facilitate or render more easy the misappropriation of said funds." The appellee demurred to the bill of complaint, and it is from a decree sustaining the demurrer that this appeal was taken.

At the same time the appellant filed a bill of complaint against the appellee Herman Kloppel, wherein it was alleged that Wattenscheidt, as trustee, had sold the appellee two ground rents in Baltimore for $2,090; payment for the same having been made by the appellee's check payable to the order of "C. R. Wattenscheidt, Attorney," which the payee deposited to his individual account, and the proceeds of which he converted to his own use. In all other respects the allegations are identical with those of the McComas bill. The question submitted for decision by both bills being the same, they will be considered and decided together.

The precise question here involved has not been decided in this state, but the appellant contends that the principles stated in the cases of *Duckett v. Nat. Mechanics' Bank,* 86 Md. 400, 38 A. 983; *Barroll v. Forman,* 88 Md. 188, 40 A. 883; *American Bonding Co. v. Nat. Mechanics' Bank,* 97 Md. 598, 55 A. 395; and *Safe Dep. & Tr. Co. v. Cahn,* 102 Md. 530, 62 A. 819, support his contention.

The case of *Duckett v. Nat. Mechanics' Bank,* 86 Md. 400, 38 A. 983, arose out of the failure of the bank to deposit to the credit of Clagett, trustee, a check drawn on a bank at Laurel, Maryland, "to the order of James Scott, cashier," for $2,024.30 "to deposit to the credit of Henry W. Clagett, trustee," and instead, accepting it for deposit of Clagett's per-

sonal account, from which it was checked out by him. The bank was held liable. The rule applied, as stated in the opinion by Chief Judge McSherry, was: Whoever knowingly aided him, or knowingly participated with him, in misapplying that fund, became, by reason of so aiding and so participating, equally liable with him to make the fund good by restoring it to the trust estate. 2 *Pom. Eq. Jur.,* sec. 1079. * * * This liability of the bank depends, however, altogether upon the contingency that it knowingly aided the trustee, Clagett, to commit the default of which he was undeniably guilty." In that case, however, it was said that the bank's duty ended with the deposit, and it was under no obligation to see to the withdrawals. There was another check involved in that case, drawn by the same maker "to * * * James Scott, cashier, * * * to deposit to the credit of Henry W. Clagett," "being the balance of purchase money due him as trustee from John R. Coale," for which the bank of deposit was not held responsible because the word "trustee" did not appear after the name "Clagett," and therefore not held to be on notice. If the proceeding on the latter check had been against the maker, who it appears from the facts recited in the opinion unquestionably knew of the capacity of the recipient of the check, this court would then have had the precise case now presented. There was no suggestion, however, that the maker of the check, which failed to characterize Clagett as trustee, should have been held responsible.

In *Barroll v. Forman,* 88 Md. 188, 40 A. 883, 886, two notes of a third party to the order of Forman, the purchaser, were indorsed in blank by the latter and given to Weedon, one of the trustees, Barroll being the other trustee. The notes were indorsed to an innocent holder by Weedon, who appropriated the proceeds. "By thus indorsing them he enabled Weedon, unintentionally it may be, to do just what was done—transfer them without any notice to third persons that they belonged to the trust estate—and made it easy for him to commit a breach of trust, thus materially aiding him in the accomplishment of his purpose." The fact is, and it was so held in that case, that Forman had no authority from

Barroll to make such a settlement, so that payment was not made to the persons who were entitled to the money, to wit, the trustees.

It is clear from the opinion that, if the blank indorsements by Forman had been made with Barroll's approval or authority, Forman would have escaped liability, as did some other purchasers in the same case. Then too the indorsement of the note in blank as part payment of the purchase money was equivalent to a check payable to the executor individually, complained of in one of the instant cases, and *Barroll v. Forman,* instead of being an authority for the appellant's contention, supports the appellees in these cases.

In *American Bonding Co. v. Nat. Mechanics' Bank,* 97 Md. 598, 55 A. 395, a clerk of court had deposited license fees in the bank at interest, in a special account. In settling with the State, the actual amount of fees collected was turned over to it, and the interest was credited to the personal account of the clerk; the justification being that his predecessors had been doing it. His surety, in a suit against the bank to recover the amount it had paid, recovered on the ground that the bank had so actively and knowingly participated in the clerk's diversion of the interest to his own use as to make it equally liable with him for the breach of his duty. It would be stretching the rule applied in that case to hold that the appellees here actively or knowingly participated in the defalcation of the executor and trustee. In the case cited, the bank had the fund on deposit plainly earmarked, and facilitated the division of the deposit between the clerk and the State.

Another case relied on by the appellee is that of *Safe Dep. & Tr. Co. v. Cahn,* 102 Md. 530, 62 A. 819, 820. There certain stocks held in the names of two trustees were sold through brokers, who sold all of the shares for the individual benefit and account of one of the trustees, and credited the proceeds to his individual account, and paid the same "by check to him individually, without indicating in any way on the face of the checks that they represented the proceeds of the sale of stock belonging to a trust estate," and without naming the

other as trustee or payee. Holding that the brokers were, on the allegations of the bill, charged with knowledge, and had participated in the perpetration of the fraud, this court, in an exhaustive opinion by Chief Judge McSherry, applied the rule that "both the defaulting trustee and his confederates, those who aided and abetted him, occupy precisely the same relation to the trust estate. Each is primarily liable." Page 537 of 102 Md., 62 A. 819, 822. The opinion in that case also carefully distinguished between the effect of the two checks in *Duckett v. Nat. Mechanics' Bank, supra,* one of which was payable to the bank cashier for deposit to Clagett as trustee, while the other was payable to Scott, cashier, for deposit to the credit of Clagett personally, as the context plainly shows.

If the appellees in these cases had paid the purchase money to Wattenscheidt in cash instead of by checks, it is not contended that any responsibility would have attached to the purchasers on account of the diversion of the funds. In the case of *In re Flower,* 27 Ch. D. 592 (1884), it is said: "If money be paid down on a table in the presence of all the trustees, that will be payment to all of them, and if they accept the payment what may be done with the money afterward the purchasers will have no concern with." This is, in effect, what was done in both cases before us. There was but one executor, who was also trustee. He is the person to whom the checks were given, two of them payable to him, "attorney"; one of them to him individually. The checks were accepted and were good, so that the effect would have been the same if the purchasers had paid in cash instead of by check. They may have known and understood in just what capacity the seller was acting. In the sale of the drug store there was a contract signed by Wattenscheidt, "executor of Sarah A. Stembler, deceased," and in the other case there had to be a deed, though it is not so alleged and none is filed with the bill, but in any event payment in cash or its equivalent is all that is required, unless there be some more specific charge of active participation in the transactions by the appellees. The fact that two of the checks of the appellees

were payable to Wattenscheidt, "Attorney," here has no special significance, as, without other qualifying words, the usual and proper meaning given to it is attorney at law. *First Nat. Bank v. Kenney,* 116 Md. 24, 34, 81 A. 227.

The appellants' complaint in these cases is that the word "executor" did not follow the name of the payee in all of the checks given by McComas for the drug store, and the word "trustee" in the check given by Kloppel in the purchase of the ground rents, and that for their failure to so characterize the payee they "took the first step that ended in the spoilation of the trust." *Duckett v. Nat. Mechanics' Bank,* 86 Md. 400, 38 A. 983; *Barroll v. Forman,* 88 Md. 188, 199, 40 A. 883. If the payee of the checks intended to appropriate the proceeds, as he surely did intend, payment to him in any form would have been the first step; but there is no allegation that the appellees had any knowledge of the contemplated misuse of the funds by Wattenscheidt. "In the absence of notice of an intended misuse of the proceeds or of an unauthorized purpose, a purchaser has a right to assume that the proceeds will be properly applied and that the purpose is one for which the transaction is authorized, and he will not be affected by a misapplication by the trustee in which he takes no part." 2 *Perry on Trusts* (7th Ed.), sec. 800. By section 2, article 37A of the Code (Supp. 1929) Act of 1929, ch. 572, it is provided: "A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary; and any right or title acquired from the fiduciary in consideration of such payment or transfer is not invalid in consequence of a misapplication by the fiduciary."

With no charge of bad faith on the part of the appellees and none that they were on notice of the intended misuse of funds by the executor and trustee with whom they dealt, and no failure of duty by them, we think the action of the chancellor in sustaining the demurrers in these cases was proper.

*Decrees in Nos. 38 and 39 affirmed with costs.*